**STATE of Missouri, Respondent,**

v.

**June Charles SIMS, Appellant.**

**No. 57575.**

Supreme Court of Missouri,

Division No. 1.

Nov. 12, 1973.

———◆———

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Douglas N. Merritt, The Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant; Paul T. Miller, Executive Director, Willard B. Bunch, Chief Defender, Kansas City, of counsel.

HIGGINS, Commissioner.

June Charles Sims, charged with arson of a dwelling house, was convicted by a jury which assessed his punishment at forty years' imprisonment. Sentence and judgment were rendered accordingly. § 560.010, RSMo 1969. (Appeal taken prior to January 1, 1972.)

Appellant's statement of the case demonstrates a submissible case of arson of a dwelling house:

" * * * Appellant had serious marital trouble with his wife shortly before she had abandoned him after only three days of the marriage. * * * she was fearful of him and was trying to avoid him. * * * Because of the family altercations she abided with Mrs. Jefferson and her mother for the weeks prior to the fire.

"Shortly before the fire * * * Mrs. Jefferson and Mrs. Sims returned home from grocery shopping at about 8:15 p. m. * * * January 23, 1971. About a block or two from the home, Mrs. Sims * * * saw her husband's car, a 1970 'Charger' which she recognized. At that time she wrote the license number on an envelope. When the automobile crossed at an intersection in front of the Jefferson car, Mrs. Sims recognized the Appellant as the driver and saw three other unknown men in the vehicle.

"The ladies continued to the residence and removed the groceries into the house. Mrs. Sims remained in the back part of the house dishing up ice cream for Mrs. Mary Hobbs, the third resident of the house and Mrs. Jefferson had returned toward the automobile at the front curb. As she opened the front door she saw a tall Negro which she couldn't identify, throw something through the front window. The thing burst into flames and Mrs. Jefferson ran from the house.

" * * * Roderick Henderson, a nineteen (19) year old man testified that he was the man Mrs. Jefferson had seen, that he did in fact light and throw the bottle of gasoline through the window of the home. Also, John Thomas, age seventeen (17), admitted actual participation of [in] the crime.

"Both of the bombers testified that the Appellant had shown them how to prepare such bottles of gasoline and stated that they both were instigated to the act by the Appellant and went to the scene with the Appellant in his car. Furthermore, they testified that the Appellant drove them from the scene and they learned via police band radio received while still in the Appellant's car that the Appellant was suspected of the crime. * * *

"The Appellant testified that he met the principals in the crime, Roderick Henderson and John Thomas in company with several other young men who had formed a vigilante group. He said that he had been approached and asked to participate but that he had refused.

"The State's witnesses, Roderick Henderson and John Thomas, both stated that they met the Appellant for the first time on the day before the fire. The Appellant remembers both men from some time two years previously when he worked as a guard at Paseo High School. At that time both Henderson and Thomas showed great enmity toward the Appellant.

" * * * Appellant testified that he was at a house at 1715 Montgall, the residence of Mrs. Evelyn Crosby. He left there about 8:00 p. m. or 8:30 p. m. * * * and went then to his brother's house. Enroute he encountered Michael Thomas (no relation to the witness, John Thomas) on Prospect Avenue. He loaned Michael Thomas fifty cents and continued to his brother's house arriving there about 8:45 p. m."

Appellant's sole contention is that he was "denied due process of law and a fair trial because of non-disclosure by the prosecution of promises made to material witnesses."

This complaint was not presented to the trial court. Appellant's argument here is that Roderick Henderson and John Thomas gave damaging testimony "and the appellant believes their testimony was elicited in return for leniency in the charges then pending [against them] on the same set of facts." See Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

Appellant would support his contention and assertion by way of exhibits filed pursuant to Rule 82.15, V.A.M.R. The exhibits contain the record of proceedings with respect to John Lewis Thomas and Roderrick Henderson. They show that John Lewis Thomas, charged with arson, pleaded guilty November 1, 1971; that sentence was deferred pending presentence investigation; and that on February 3, 1972, imposition of sentence was suspended and defendant was placed on probation under supervision of the Missouri State Board of Probation and Parole for four years. They show also that Roderrick Henderson, charged with arson, pleaded guilty April 12, 1971; that sentence was deferred; and that on January 6, 1972, sentence was again deferred and defendant was placed on supervised probation for four years. The latter record also shows that Roderrick Henderson successfully completed probation and was discharged April 27, 1972.

Appellant would also support his position with some complaints he now makes with respect to the prosecuting attorney's argument; however, defendant failed to preserve such alleged error by proper objection during the argument.

The difficulty in appellant's position is that his contention does not prove itself, and there is nothing in this record to suggest that the prosecuting attorney had made any promises to or agreements with the witnesses with respect to their future prosecution to disclose to the jury.

Accordingly, the rule in Giglio v. United States, supra, has no application to this case. The situation is more akin to that in State v. Stidham, 449 S.W.2d 634, 638 (Mo.1970), in denial of defendant's claim he was denied due process by the State's

alleged knowing use of perjured testimony from two fellow prison inmate witnesses:

"The insuperable difficulty with this particular claim of infringement of due process is that it is not supported by the record. * * * The only circumstance now present as to both Creighton and Trout is * * * that in July 1955 they did testify as state's witnesses and subsequently their sentences were commuted * * * and aside from the bare fact of the commuted sentences * * * '(t)he record is barren of facts to support such allegations.' * * * Thus upon this record there was no support for the charge * * *."

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.