**STATE of Missouri, Plaintiff-Respondent,**

**v.**

**Leo REO, Defendant-Appellant.**

**No. 9325.**

Missouri Court of Appeals,
Springfield District.

May 23, 1974.

Dan L. Birdsong, Asst. Public Defender, Rolla, for defendant-appellant.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for plaintiff-respondent.

HOGAN, Chief Judge.

Leo Reo was found guilty of receiving stolen property, as defined and denounced by § 560.270, RSMo 1969, V.A.M.S., and his punishment was fixed at imprisonment for a term of two years. He appeals, contending 1) that the State failed to prove he received the property with knowledge that it was stolen, and 2) that the State failed to prove the property was worth more than $50. We reverse and remand.

On August 27, 1971, the home of Dr. Harvey E. Nickols was burglarized. Among the items taken were a portable TV set and a .22 caliber carbine. Defendant was charged with having received the carbine. The state's evidence bearing on defendant's guilty knowledge came from two witnesses, Michael Joseph Walter, one of the burglars, and Ira Franklin Bradley, defendant's roommate.

Walter identified himself as one of a group of boys who burglarized the Nickols residence. He testified that several things were taken, but at first could not identify the particular carbine introduced in evidence beyond saying that if it came from the Nickols residence, "it probably was" the one taken. Walter further testified that when "the merchandise was split up" he received the TV set as his share of the spoils. He had sold the TV set to the defendant for "[t]en or fifteen dollars", but he was unable to recall which of his confederates received the carbine as his share.

Walter was asked about the defendant's knowledge that the carbine was stolen. His answer was, "All of us just discussed where the stuff came from." The discussion took place in defendant's presence at defendant's residence, "about a week or so later, I guess." Later than what, we are not advised, but when the discussion or conversation occurred, Walter observed that defendant had "[s]ome guns" "[u]nder the couch". Defendant was then living "[u]p here at a trailer court". The State pressed the matter, eliciting once more from Walter that "[w]e was talking, at [defendant's] house—maybe down at the garage." Walter was unable to recall how the stolen character of the goods came up in conversation, and he qualified his statement concerning the other guns by saying that "[t]hey were just put under the couch", not hidden.

Upon counsel's objection that there was no proof that more than one gun was taken in the burglary, a conference was held out of the hearing of the jury, the trial court agreed that the State should try to "connect that up", and the State was permitted to resume its interrogation about the several "guns". Walter was specifically interrogated about his reference to "other guns", and he then testified that he could identify them as being articles taken in the Nickols burglary. Once more, the witness was asked the basis of his belief that de-

fendant received the carbine knowing it to be stolen, and again he answered, "We just talked about it, how the guns was taken and where from." Walter stated that he and two of his confederates were present when the conversation or discussion took place; perhaps Bradley was also present.

Bradley, who had shared several residences with the defendant, testified that defendant kept "some guns" under a couch when the two were living at a trailer court. Bradley said there was "general knowledge" that several guns had "come from Doc Nickols"; he "imagine[d]" defendant knew the guns were stolen; defendant had been "present when it was discussed where [the guns] come [sic] from". Bradley "believe[d]" the carbine was one of the guns under the couch or bed at the trailer court, and when he and defendant moved, defendant took the carbine and "another single shot .22" to the new residence which the two men shared. There was evidence from which a jury might have found that either defendant or Bradley sold the carbine to one Kenneth Sullins, who surrendered it to police officers on demand.

Present § 560.270, enacted in 1955 as part of a revision of the statutes defining larceny and cognate offenses,[1] reads as follows:

"Every person who shall buy, or in any way receive, with intent to defraud, any property that shall have been stolen from another, knowing the same to have been stolen, shall, upon conviction, be punished in the same manner and to the same extent as for the stealing of the property so bought or received."

■ The parties have briefed their arguments in differing terms, confusing the

elements of the offense, as set out, for example, in State v. Ciarelli, 366 S.W.2d 63, 66–67 (Mo.App.1963), with the specific factual findings necessary to establish guilt and fix a punishment, which depend on the particular and distinct circumstances of the case. See MAI–CR 7.78 (1974). We need not pursue the distinction at length, but we may point out that § 560.270 and its predecessors were enacted and reenacted at least partially in aid of the statutes denouncing larceny and kindred offenses. State v. Honig, 78 Mo. 249, 252–253 (1883); LaFave & Scott, Criminal Law, § 93, p. 682 (1972). Section 560.270 does not in terms prescribe a punishment; that is made to depend on the accused's past record and the type of stealing involved. In this case the value of the property stolen is wholly immaterial because it was admittedly taken from a dwelling house. On the record presented, if the defendant is guilty, he is guilty of a felony. § 560.161, para. 2(1).

■ We agree with the argument that proof of receipt of the stolen goods is necessary because the receiver is no longer regarded as an accessory to the theft, as he once was. State v. Magers, 452 S.W.2d 198, 200 (Mo.1970), and see 1 Terr.Laws, p. 18, § 14 (1804); LaFave & Scott, supra, at 682. "Receive" as used in the statute means taking possession of the stolen goods, State v. Ciarelli, supra, 366 S.W.2d at 67, and receipt could readily be inferred here. The jury could have found that defendant moved the carbine from one residence to another, placed it under a couch or a bed in a trailer he shared with Bradley, and finally sold it to Sullins.

■ Nevertheless, our courts have quite uniformly and consistently held that to convict an accused under § 560.270, the

---

1. The recent history of the statutes defining "stealing" and "receiving stolen property" is discussed in State v. Harris, 313 S.W.2d 664, 668–669 (Mo.1958), and State v. Zammar, 305 S.W.2d 441, 443–445 [3, 4] [5] (Mo. 1957).

**214**

State must prove the accused had actual knowledge of the stolen character of the goods at the time he received them and mere possession of the stolen property raises no presumption of such guilty knowledge. State v. Magers, supra, 452 S.W.2d at 200; State v. Miller, 433 S.W.2d 281, 283 [1, 2] (Mo.1968); State v. Taylor, 422 S.W.2d 633, 636 [1, 2] (Mo.1968). Moreover, this seems to be the universally accepted rule where the statute denounces "receiving" rather than "receiving and concealing" or "retaining possession" of the stolen property. See Lewis v. Hudspeth, 103 F.2d 23, 24 [3] [4] [5] (10th Cir. 1939); 76 C.J.S. Receiving Stolen Goods § 8 b, pp. 11–12 (1952). It was therefore incumbent upon the State to prove that the defendant knew the carbine was stolen when he took possession of it. Such knowledge might have been shown by circumstantial evidence, State v. Ham, 104 S.W.2d 232, 233 [2] (Mo.1937), but all the record before us shows is that at some time subsequent to receiving the carbine— and perhaps other stolen guns—defendant became aware the property had been stolen. True, as the State points out, the defendant testified he had "[o]verheard some" about the Nickols burglary, but the actual knowledge required by § 560.270 means something more than facts which would put a reasonably prudent man on notice, State v. Taylor, supra, 422 S.W.2d at 636, and the mere fact that defendant had heard of the Nickols burglary would not impute guilty knowledge of the stolen character of the carbine itself.

The judgment must be reversed but we are not inclined to reverse without remanding. We intend no levity, but it appears to us that the State simply undertook to make its case by the wrong burglar, and a submissible case might be made upon remand.

For the reasons indicated, the judgment is reversed and the cause is remanded.

All of the Judges concur.