STATE of Missouri, Plaintiff-Respondent,

v.

Harry Elbert FLAUAUS, Defendant-Appellant.

No. 35354.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Sept. 24, 1974.

Motion for Rehearing or Transfer Denied
Oct. 11, 1974.

Application to Transfer Denied
Dec. 16, 1974.

874

Brady, Brady & Devereaux, St. Louis, for defendant-appellant.

Ellen S. Roper, Asst. Atty. Gen., and Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GUNN, Judge.

Defendant was convicted by jury of buying stolen property valued at more than $50 in violation of § 560.270 RSMo 1969, V.A.M.S. The penalty assessed was a fine of $1,000. Defendant appeals.

Defendant primarily assigns as error: 1) the trial court's failure to suppress evidence allegedly obtained through an unlawful search and seizure; 2) the State's failure to state a prima facie case in its opening statement; 3) the State's failure to prove defendant's knowledge that the property purchased was stolen and the failure to prove the value of the property; 4) the

trial court's overruling defendant's motion for verdict of acquittal and new trial on the basis that the State's key witness had perjured himself with knowledge of the prosecutor; 5) that a deal was made for the witness' testimony without disclosure to defendant. We affirm the judgment.

On July 23, 1972, the Flat Steel Manufacturing Company in St. Louis was burglarized. Among the items taken was a tool box belonging to Peter Mueller which contained measuring and cutting tools and micrometers. The day after the burglary, Richard Boatright, a 17 year old youth, was arrested and admitted committing the burglary. In his statement to police, and also in his testimony at trial, Boatright told that he and some other youths had taken the tool box from the Flat Steel Manufacturing Company; that on the same night, the tool box was taken by the youths to defendant, who, after being told by Boatright that it was stolen, paid Boatright $28 for the box of tools. Boatright and his companions then assisted defendant.in removing the tool box with the tools to a food market at 7142 Watson Road in St. Louis County where defendant worked part time and where the tool box and tools were deposited. Defendant asserted at trial that Boatright had not told him that the tools were stolen; rather, that they belonged to Boatright's grandfather.

After his arrest, Boatright was taken by a police officer to a St. Louis County magistrate, and, based on affidavits of Boatright and the police officer, a search warrant was issued authorizing the seizure of a "green metal tool box, containing various machinists tools, including several micrometers" at 7142 Watson Road, St. Louis County. Upon entering the food market at the Watson Road address, police observed a tool box in plain view in an open meat display case. The tool box was immediately visible and was not concealed in any manner. It was also the only tool box on the premises. The police officer described the tool box which he seized as black and made of steel or wood with a rough grain finish on the outside. The tool box contained various machinists tools and micrometers.

## I. The Search and Seizure

Prior to trial, defendant moved to quash the search warrant and suppress the evidence seized thereby. His attack on the warrant is threefold. He first argues that the information to the magistrate was insufficient to give proper cause to issue the warrant, in that there was no proof of the reliability of the informant, citing Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584, 21 L.Ed.2d 637 (1969). Second, defendant contends that neither the premises nor the items seized were sufficiently described, particularly since there was more than one business at 7142 Watson Road. For the second point, defendant relies on In re 1969 Plymouth Roadrunner, 455 S.W.2d 466 (Mo.1970). Third, defendant argues that since the warrant specified a green metal tool box, the wrong item was unlawfully seized by the taking of a black tool box which was made of steel or wood. For reasons which follow, we hold the search warrant valid and find that the trial court was correct in overruling defendant's motion to quash and suppress. Since we have not been furnished a copy of either the affidavits or the search warrant issued, we are required to rely on the testimony contained in the transcript relating to the motion to quash. State v. Montgomery, 424 S.W.2d 744, 746 (Mo.1968); Kansas City v. Mathis, 409 S.W.2d 280, 288 (Mo.App.1966). The evidence we have is that furnished by Boatright, who admitted taking the tool box and who personally appeared before the magistrate and submitted a written affidavit that he had taken the stolen property to the food market at 7142 Watson Road. The defendant seems to suggest that the magistrate must have had previous experience with an informant before he may consider an informant's information reliable. We think not. We believe that the magistrate here had probable cause to issue a warrant. The magistrate was afforded substantial

basis to conclude that the stolen property was where Boatright said it was. We deem it sufficiently reliable information if, as in this case, an informant confesses before a magistrate that he has taken certain items, describes the items in an affidavit sworn to before the magistrate and designates where the items are located. The Missouri Supreme Court reached a similar conclusion with a corresponding factual situation in State v. Hunt, 454 S.W.2d 555 (Mo.1970), cert. denied, 400 U.S. 942, 91 S.Ct. 239, 27 L.Ed.2d 245 (1970). Defendant's reliance on Spinelli v. United States, supra, is misplaced, for in Spinelli the informant was never identified for the magistrate issuing the search warrant.

■ We find the identification of the premises to be searched and the items seized to be adequate and sufficient to comply with Rule 33.01(b), V.A.M.R., which provides:

"(b) The complaint and the warrant issued thereon must contain a description of the personal property to be searched for and seized and a description of the place to be searched, in sufficient detail and particularity to enable the officer serving the warrant to readily ascertain and identify the same."

Although there may have been one or two other places of business at 7142 Watson Road, there was only one food market which, testimony indicated, was the establishment to be searched, and that is where the search was made. In Steele v. United States, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757, 760 (1925) the test in judging the sufficiency of a description was set forth as:

"It is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." (l. c. 503)

Here, the identity of the premises to be searched was sufficiently described to allow a reasonable search to be conducted. The police were not misled by the description recited in the warrant. The police knew the precise area to be searched, and no license was given to them to conduct an indiscriminate, unreasonable search of areas not intended by the warrant. See Hanger v. United States, 398 F.2d 91 (8th Cir. 1969), cert. denied, 393 U.S. 1119, 89 S.Ct. 995, 22 L.Ed.2d 124 (1969), rehearing denied, 395 U.S. 971, 89 S.Ct. 2106, 23 L.Ed.2d 761 (1969), which upheld the validity of a search warrant, based on Steele v. United States, supra, which named an entire apartment building although the intent was to search a single apartment and which contained an erroneous address.

■■ We also find that the description of the items to be seized was sufficient. Absolute precision is not necessary in the identification of items to be seized. The matter to consider is whether the items were sufficiently described so that an exercise of judgment respecting the items to be seized is not arbitrary. The purpose of requiring that items to be seized to be listed specifically is to ensure that the property taken is not left to the caprice of the police conducting the search. Stanford v. Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). The opportunity to exercise such discretion was not available to the police in this case. In this case, a single tool box was in plain view in premises where police had a right to be.[1] Further, a food market is not a place likely to contain a large quantity of tool boxes. The situation here is not one where police could arbitrarily search through several tool boxes looking for the right one. There was only one tool box for police to search and seize. The law as to reasonable search is not intended to produce the incongruous results which would occur if defendant's posi-

1. We need not delve into the "plain view" doctrine of Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), for that is not the basis of our determination of the validity of the search warrant.

tion on this point concerning the search and seizure were upheld. Hanger v. United States, supra. State v. Hunt, supra, is particularly apposite to the factual situation here, for in Hunt, the description in the affidavit for warrant for search for "two small tool boxes red in color" and "an empty tool chest" was held sufficient.

■ Under the facts of this case, where there was but a single tool box to be seized in a food market, the reference to color and composition of the tool box would simply be surplusage. In re 1969 Plymouth Roadrunner, supra, relied on by defendant is distinguishable from this case. In Plymouth Roadrunner, a search warrant was found defective, in that it failed to state the names of the persons from whom items had been stolen, the type or names of the items, the time, place, or nature of taking of such items or a definite description of the particular items stolen which would prevent the possibility of seizing items other than those stolen. In this case, we have sufficient description of a limited item and particular premises which satisfies the requirement for a valid search warrant.

## II. The Opening Statement

■ Defendant suggests that the prosecutor's opening statement failed to make reference that the element of actual knowledge would be proven. Defendant argues that the prosecutor, therefore, failed to state a prima facie case and that under State v. Wadlow, 450 S.W.2d 200 (Mo. 1970), fatal error was committed as defendant was denied the opportunity to fairly answer the essential points required to be stated by the prosecutor in opening argument. Defendant's argument in this regard is not meritorious. In this opening statement, the prosecutor read to the jury the indictment issued against defendant which specifically included the following statement:

" . . . the said Harry Elbert Flauaus did buy the said property then and there *well knowing* said property to

have been feloniously stolen, taken and carried away with the felonious intent on the part of the thief to permanently deprive the owner of the use thereof." (emphasis added)

The foregoing recitation of the indictment by the prosecutor was sufficient to advise the jury that defendant had actual knowledge that the items sold to him were stolen. It was also sufficient to advise defendant that the State intended to prove as an essential element of its case that defendant had actual knowledge that the items sold to him were stolen. State v. McAllister, 468 S.W.2d 27, 29 (Mo.1971).

## III. Defendant's Knowledge and Proof Value

■ Essential to a conviction for receiving stolen goods under § 560.270 RSMo 1969, V.A.M.S., is proof that defendant had actual knowledge that the goods were stolen at the time he received them. State v. Reo, 510 S.W.2d 211 (Mo.App.1974). The charge here was for receiving stolen goods having a value of more than $50. Inasmuch as the type of offense and the penalties differ for receiving stolen goods depending on whether the value of the goods received is $50 or more, the value of the goods must also be proved. See State v. Reo, supra.

■ Defendant contends that the State failed to prove by competent evidence that defendant knew that the property was stolen or the value of the property. We disagree. We believe that there was sufficient evidence from which a jury could find that defendant knew the tool box and its contents were stolen. Boatright specifically testified that he told defendant at the time he sold the items to him that the tool box contained stolen tools. Defendant claimed that Boatright told him that they belonged to Boatright's grandfather. The issue is which witness the jury believed. It is not our function to decide which witness the jury should believe. Nor is it our function in a criminal

prosecution to weigh the evidence. On an appeal we regard the substantial testimony and reasonable inferences most favorable to the jury verdict as true. State v. Maxwell, 502 S.W.2d 382 (Mo.App.1974). It is the jury's province, not ours, to determine the credibility of the witnesses. State v. Bizzle, 500 S.W.2d 259, 261 (Mo.App. 1973). We deem that there was sufficient evidence provided by the State to permit a jury to find that defendant knew the items he purchased had been stolen.

■ The question as to the value of the items purchased is also one for jury determination. State v. Burrage, 418 S. W.2d 101 (Mo.1967). The evidence of value of the property by the owner of the goods may be used to establish the value of the property. State v. Matzker, 500 S.W. 2d 54 (Mo.App.1973).

■ The owner's testimony as to value of property taken is competent to establish value even though the owner was not qualified as an expert. The jury determines the weight and value of such testimony. State v. Brewer, 286 S.W.2d 782 (Mo. 1956). Here, the owner of the tool chest and tools testified, without objection, that he would have paid at the time of their theft between $300 and $500 for the tools which had been stolen. Such testimony was sufficient to establish the tools' value at over $50 and to support the conviction of receiving stolen goods valued at over $50. State v. Matzker, supra.

## IV. The Alleged Perjured Testimony

We review defendant's contention that Boatright gave perjured testimony with the knowledge of the prosecutor and that a "deal" had been made between the prosecutor and Boatright to obtain Boatright's testimony against defendant. The testimony of Boatright was critical to the State's case, for it was he who testified that he specifically told defendant at the time of the sale of the tools that they were stolen.

During the trial, Boatright, in response to questions asked of him by the court and prosecutor, testified that no deal had been made regarding charges against him in return for his testimony. Subsequent to the trial, one of Boatright's companions on the night of the burglary presented an affidavit to the trial court to the effect that the companion had overheard Boatright's lawyer tell Boatright that the prosecutor would drop charges as barter for testimony against defendant. Boatright's lawyer, Boatright, the prosecutor and all persons in a position to overhear such conversation flatly denied any such exchange having taken place.

There was also some testimony by Boatright at the trial to the effect that Boatright had not met with the prosecutor prior to trial, but at the hearing on the motion for rehearing, both the prosecutor and Boatright recalled meeting briefly shortly after Boatright was arrested, but apparently not to discuss any deal regarding Boatright's testimony. Defendant complains that the State's key witness, therefore, committed perjury with knowledge of the prosecutor.

We cannot find that the trial judge erred in refusing to sustain defendant's motion for new trial which was based on the allegations of a "deal" and perjury. The heart of defendant's appeal on these points is whether the evidence disclosed at the hearing on motion for new trial but not disclosed to the defense or court before or during the trial was such as to require a new trial under due process. Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed. 2d 1217 (1959); State v. Collor, 502 S.W. 2d 258 (Mo.1973). We find no abuse of due process in this case.

■ Defendant asserts that a nexus exists between the false testimony concerning a meeting between the prosecutor and Boatright and a purported deal for Boatright's testimony. We therefore treat the

alleged perjury and deal issues together. If the conviction against the defendant was obtained through the use of false testimony and the trial court was satisfied that it was on the basis of perjury that the defendant was convicted, the trial court has the obligation to grant a motion for a new trial. But the determination whether the conviction has been obtained through perjured testimony and a new trial is to be granted thereby rests largely within the discretion of the trial court, with such motion not to be lightly granted. State v. Harris, 428 S.W.2d 497 (Mo.1968); Tyler v. State, 501 S.W.2d 189 (Mo.App.1973). To warrant the granting of the motion for new trial, it is incumbent upon the defendant to show that the testimony used at trial was deliberately false and known to be so by the prosecution and that the conviction was obtained by reason thereof. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); Napue v. Illinois, supra; Tyler v. State, supra. A new trial is not automatically required whenever evidence is disclosed after trial which may be useful to the defense but not likely to change the verdict. Giglio v. United States, supra. Here, the trial court did not err in failing to find that there was evidence presented in the hearing on defendant's after trial motion which, if known to the jury, would have changed the verdict. State v. Collor, supra. The record here fails to support a finding that the trial judge was clearly erroneous in his determination that the necessary elements to sustain a motion for new trial had not been established.

 Neither can we find that the trial court was clearly erroneous and abused its discretion in overruling the motion for new trial by failing to find sufficient evidence to support defendant's argument that a deal had been made for Boatright's testimony. The protective cloak of Napue and Giglio does not, therefore, afford defendant comfort in this case. State v. Sims, 501 S.W.2d 161 (Mo.1973). As said in

State v. Brooks, Mo.Ct.App. 1973, 513 S.W.2d 168:

"[T]he important consideration is not whether a promise or agreement has been made or whether it is carried out, but whether the witness believes or has reason to believe that if he testifies in a particular manner he will receive more favorable treatment."

Boatright and the prosecutor were unequivocal in their denial of any arrangement made for Boatright's testimony. The trial court could well find as a basis for its ruling on the motion for new trial that the State had done nothing to cause Boatright to believe or give him reason to believe that his testimony would result in favorable consideration of the case pending against him. There was no substantial basis for granting the motion for new trial on grounds of false testimony or understanding as to future prosecution against Boatright.

## V. Miscellaneous

 Defendant charges that the trial court erred in overruling his motion for mistrial after Boatright was asked at trial by the prosecutor whether he had made other sales to defendant, to which he responded affirmatively. The court did admonish the jury to disregard the question and answer. The granting of a mistrial is a drastic remedy which should be exercised only under such circumstances by which no action or relief short of mistrial would remove the claimed prejudice. State v. Johnson, 504 S.W.2d 23 (Mo.1973); State v. Goff, 490 S.W.2d 88 (Mo.1973). The granting of a mistrial is discretionary within the trial court and every error which might occur during the trial of the case does not necessarily require the granting of a mistrial. Further, absent an abuse of discretion, a reviewing court should not interfere with the trial court's ruling for a motion for mistrial. State v. Schlagel, 490 S.W.2d 81 (Mo.1973); State v. Phelps, 478

S.W.2d 304 (Mo.1972). We cannot find any abuse by the trial court of its discretion in failing to grant the drastic remedy of mistrial under the circumstances before us. Neither can we find that the question or answer related to any prior sales of stolen property; hence, defendant was not prejudiced thereby.

■ The defendant also alleges that the trial court erred in failing to give two cautionary instructions concerning the testimony of Boatright. First, defendant argues that the jury was required to be instructed that if they believed Boatright had lied in any part of his testimony, the whole of his testimony should be disregarded. Defendant also asserts that since Boatright was an accomplice, the jury should have been instructed to regard his testimony with great caution. *Falsus in uno, falsus in omnibus* and credibility instructions are discretionary with the trial court. We find no abuse of the trial court's discretion here. State v. Green, 511 S.W.2d 867 (Mo.1974); State v. Collor, supra; State v. Crow, 486 S.W.2d 248 (Mo.1972).

■ Neither is there need for the other cautionary instruction requested by defendant. "An 'accomplice' is one who knowingly, voluntarily, and with common intent with the principal offender unites in the commission of a crime." State v. Burks, 484 S.W.2d 302 at 304 (Mo.1972). Boatright admitted stealing the tools sold to defendant, but the thief is not an accomplice in the crime of buying and receiving stolen property. State v. Park, 322 Mo. 1969, 16 S.W.2d 30 (1929). Therefore, there was no need for an accomplice cautionary instruction. State v. Martin, 428 S.W.2d 489 (Mo.1968).

The judgment is affirmed.

SMITH, P. J., and CLEMENS and McMILLIAN, JJ., concur.