**STATE of Missouri, Respondent,**

v.

**James B. GANT, Appellant.**

**No. KCD 29781.**

Missouri Court of Appeals,
Western District.

Sept. 4, 1979.

James L. McMullin, McMullin, Wilson & Schwarz, Kansas City, for appellant.

James B. Gant, pro se.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, Earl W. Brown, III, Sp. Asst. Atty. Gen., Kansas City, for respondent.

Before SOMERVILLE, P. J., and PRITCHARD and MANFORD, JJ.

SOMERVILLE, Presiding Judge.

Defendant was charged as a second offender in a four count information with (1) murder, first degree ("felony" murder), Section 559.007, RSMo Supp.1975, naming Breanda Marie Hendren as the victim, (2) assault with intent to kill with malice aforethought, Section 559.180, RSMo 1969, naming Kathy Spry as the victim, (3) assault with intent to kill with malice aforethought, Section 559.180, RSMo 1969, naming James Edward Norman as the victim, and (4) armed criminal action in connection with "the crime of assault with intent to kill (malice)",[1] Section 559.225, RSMo Supp. 1976. A jury found defendant guilty on all four counts and in due course the trial court assessed defendant's punishment and rendered judgment as follows: Count I, murder, first degree—imprisonment for life; Count II, assault with intent to kill with malice aforethought (victim Kathy Spry)—imprisonment for ninety-nine years; Count III, assault with intent to kill with malice aforethought (victim James Edward Norman)—imprisonment for ninety-nine years; and Count IV, armed criminal action—imprisonment for five years. The sentences imposed under Counts I, II and III were ordered to "run consecutively and not concurrently" and the sentence imposed under Count IV was ordered to "run concurrently with all other sentences".

This court, at the outset of this appeal, is confronted with a procedural predicament of major consequence. The jury returned their verdicts on August 11, 1977, and the trial court, pursuant to Rule 27.- 20(a), granted defendant twenty days additional time to file a motion for new trial. Chronologically, the last day for defendant to file his motion for new trial fell on Saturday, September 10, 1977. However, defendant's motion for new trial was not filed until Monday, September 12, 1977. Although Rule 31.01 excludes Sunday and legal holidays from consideration in determining the last day when defendant's motion for new trial was due, provided the last day for doing so fell on a Sunday or legal holiday, the fact that the last day fell on a Saturday was of no consequence as Saturdays are not excluded under Rule 31.01 in

---

1. Count IV of the information made no effort to relate the "armed criminal action" charge to any particular count of "assault with intent to kill with malice aforethought", but was cast in broad, general terms as noted.

computing the overall time period. Adherence to Rules 27.20(a) and 31.01 dictates the inevitable conclusion that defendant's motion for new trial was not timely filed and preserved nothing for appellate review, thus relegating appellate review to issues deemed "plain error" within the purview of Rule 27.20(c). *State v. Collett,* 542 S.W.2d 783, 785 (Mo. banc 1976).

Before assessing the various "points relied on" to determine whether they should be entertained as "plain error", a statement of facts is in order. The state adduced evidence from which the jury could find that the following facts were established beyond a reasonable doubt. On January 24, 1977, James Edward Norman, one of the assault victims, shared an apartment in Columbia, Missouri, with Breanda Marie Hendren, age 16, the homicide victim. Norman was an admitted dealer in marijuana in the Columbia, Missouri, area. Kathy Spry, the other assault victim, was visiting the couple in the living room of their shared apartment at approximately 10:30 A.M. on the morning of January 24, 1977, when two black males were admitted into the living room under the ruse of wanting to purchase some marijuana. The shorter of the two black males, identified by Norman at a lineup and during trial as the defendant, asked Norman if he had a "quarter-pound of marijuana for sale". Norman replied that he only had "bags" of marijuana for sale and proceeded to the bedroom of the apartment where he kept his illicit "stock-in-trade". Defendant followed Norman into the bedroom, "pulled a gun" and pointed it at Norman and demanded that he lie on the floor. Norman complied and while in a prone position was incessantly asked by defendant "where the rest of the money and the rest of the dope was." Norman replied that all he had was marijuana and such money as was in his billfold. Defendant took Norman's billfold containing $175.00 in currency and several "bags" of marijuana which Norman had cached in the bedroom.

Norman described the gun defendant pulled on him as "long-barrelled" and "bronze copper colored". Defendant, insisting that Norman had more "pot and money", struck Norman on the head with the gun and then ordered his companion (Keith L. Matthews), who was in the living room, to "[bring] those bitches in here". Shortly thereafter Breanda Marie Hendren and Matthews entered the bedroom whereupon defendant asked Breanda Marie Hendren where the rest of the "stuff" was. She replied that there was nothing else. Matthews was unarmed. Defendant then shot Norman in the neck, from which wound Norman recovered. Norman heard several more shots, and the next thing he was aware of was seeing Breanda Marie Hendren lying on the floor of the bedroom and Kathy Spry lying on the floor of the doorway between the bedroom and the living room of the apartment. Medical testimony introduced by the state disclosed that Breanda Marie Hendren was shot in the mouth and head, the latter shot causing her death. According to Norman, defendant was the shorter of the two black males who entered the apartment.

Kathy Spry, the other assault victim, after hearing Norman yell "[g]o ahead and shoot me . . . I don't have the money", heard several shots and then saw Norman and Breanda Marie Hendren lying on the floor of the bedroom. As the two black males ran from the apartment, the shorter of the two who had the gun shot Kathy Spry in the left cheek and head from which wounds she later recovered. Kathy Spry was unable to positively identify defendant as the man who shot her.

Various witnesses testified without objection that "immediately" before January 24, 1977, defendant had been seen flourishing a "long-barreled pistol", and on the morning of January 24, 1977, before leaving the apartment where he lived in Columbia, Missouri, there were two "boxes of bullets" (which were offered and admitted into evidence without objection) at the head of the bed which he occupied in the apartment. A co-occupant of defendant's apartment testified that on the morning of January 24, 1977, she heard defendant say to his accomplice (Keith L. Matthews), "[l]et's go make the fast money", and later that day saw

defendant spreading marijuana out on the floor of his apartment and observed at that time that he had a pistol and a large amount of money.

Keith L. Matthews, defendant's accomplice and the taller of the two black males who entered the apartment on the fateful morning in question, was called as a witness by the state. He testified that on the morning of January 23, 1977, defendant asked him to come to his apartment the following morning because he "wanted to knock off some dope and some money". Matthews complied and arrived at defendant's apartment between 9:00 and 9:30 o'clock on the morning of January 24, 1977. Matthews testified that he had previously seen defendant with a ".22 long barrel chromed, brown-handled" revolver in his possession. Matthews and defendant left the latter's apartment at approximately 9:30 on the morning of January 24, 1977, and proceeded on foot to the apartment occupied by Norman and Breanda Marie Hendren. Upon passing a police car on the way over to the scene of the crimes, defendant asked Matthews if he could see his "pistol" and Matthews replied that he could. Thereupon, defendant shifted the pistol from his left side "back towards the back".

Upon entering the victim's apartment, Matthews stayed in the living room while Norman and defendant proceeded into the bedroom. Hearing a "commotion" and "loud voices", Matthews went into the bedroom where he observed defendant pointing a pistol at Norman who was lying on the floor at the time. On orders from defendant, Matthews placed the money and marijuana taken from Norman into a "brown grocery sack" which the pair had brought with them. Matthews had the "brown grocery sack" and its contents in his possession when he later fled from the apartment. Matthews preceded defendant out of the apartment. Before fleeing the apartment Matthews observed defendant strike Norman on the head with his pistol and fire two shots into Norman. According to Matthews, defendant then grabbed the girl who was in the bedroom (Breanda Marie Hendren) by the hair and put the pistol "up to

her cheek" and shot her. As Matthews was fleeing the apartment he heard several more shots after running past the other assault victim (Kathy Spry), although he did not actually see her shot. Defendant caught up with Matthews and placed the "pistol" in the "brown grocery sack" which Matthews was carrying. As he did so, he told Matthews, "I had to kill all of them . . . Sam[?] said don't leave no witnesses". When the two arrived back at defendant's apartment, defendant dumped all of the "stuff" in the "brown grocery sack" onto the floor and gave Matthews two bags of marijuana.

Two days after the robbery Matthews was questioned by the Columbia police at which time he denied any knowledge of the gruesome events which occurred on January 24, 1977. Several days later Matthews recanted and identified himself and defendant. as the two black males involved in the multiple offenses. Matthews further testified that he was charged with being "an accessory to armed robbery", "murder in the first degree" and two charges of "assault with intent to kill with malice aforethought". Prior to defendant's trial Matthews pleaded guilty to the charge of being "an accessory to armed robbery" and was given a seven year sentence. The murder and assault charges filed against Matthews were still pending when he testified on behalf of the state at defendant's trial. It is also clear from Matthews' testimony that by an agreement struck between himself and the state his seven years sentence on the robbery charge and eventual dismissal of the homicide and assault charges were the quid pro quo for testifying on behalf of the state at defendant's trial.

Defendant took the stand and denied any and all implication with the charged offenses and testified that he was visiting a girl friend in Columbia when the crimes in question occurred. The only other witnesses offered by defendant were three Columbia police officers who testified that Matthews denied any knowledge of the crimes when questioned by them two days after January 24, 1977.

This court is faced with the anomaly of being confronted with six briefs on appeal, three on behalf of defendant (two by counsel and one pro se) and three on behalf of the state. The "points relied on", thirteen (13) in number, in the triune brief of defendant are to a large extent redundant, duplicitous, and abstruse, thereby putting this court to the arduous task of excising all redundancy and duplicity and recomposing them in more explicit terms. Accordingly, with one notable exception regarding one of the "points relied on" which is copied verbatim from the second brief filed by counsel, the original thirteen "points relied on" are capsulized into the following "points relied on" for dispositional purposes:

(1) Defendant was twice placed in jeopardy for the same offense in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States and Article I, § 19, of the Missouri Constitution in that the two substantive offenses of assault with intent to kill with malice aforethought on the one hand and the substantive offense of armed criminal action on the other hand constituted an identity of offenses as they involved use of the same weapon.

(2) Joinder of the four felony charges in the same information by means of separate counts and placing defendant on trial as to all four charges at the same time violated the Sixth and Fourteenth Amendments to the Constitution of the United States in that doing so deprived defendant of a "fair trial" and further violated Article V, § 5 of the Constitution of Missouri in that Rule 24.04 promulgated by the Supreme Court authorizing such joinder is substantive as opposed to procedural in nature.

(3) "The court erred in overruling appellant's motion for new trial, particularly paragraphs 5, 6, 7 and 8 of said motion for new trial cited in motion for new trial."

(4) The trial court erred in refusing to grant defendant a new trial in that he was improperly convicted on the uncorroborated testimony of Matthews, his accomplice.

(5) The trial court erred in refusing to grant defendant a new trial in that he was improperly convicted upon perjured testimony given by Matthews, his accomplice, to the effect that no deal had been struck between Matthews and the state in return for Matthews' testimony.

(6) The trial court erred in permitting Matthews to testify against defendant as some of the charges lodged against Matthews relative to the occurrence were still pending at the time of defendant's trial.

(7) The trial court erred in permitting James Edward Norman to identify defendant during the trial because it resulted from an unduly suggestive pre-trial identification lineup.

(8) Defendant was deprived of effective assistance of counsel at the trial level in that counsel failed to object to the absence of any "black people" on the jury which tried and convicted defendant.

(9) There was not sufficient evidence to sustain defendant's conviction on any of the four charges.

■ Point (1) relied on by defendant strikes at the alleged unconstitutionality of being tried and convicted for armed criminal action in connection with the two assaults when the weapon constituting the crux of the charge was the same weapon used to perpetrate the assaults. The capstone of defendant's point is double jeopardy which, by reason of its constitutional implications, falls within the ambit of appellate review authorized by Rule 27.20(c) since "plain error" culminating in a "manifest injustice or miscarriage of justice" may have resulted. *State v. Coyne,* 452 S.W.2d 227, 228 (Mo.1970); *State v. Donnell,* 430 S.W.2d 297, 299 (Mo.1968); and *State v. Williams,* 419 S.W.2d 49, 53 (Mo.1967). However, for reasons hereinafter set forth, it is unnecessary to resolve the fundamental issue of whether the charge of armed criminal action in connection with the assaults and the charges of assault with intent to kill with malice aforethought constitute such an identity of offenses as to do vio-

lence to the double jeopardy provisions of the state and federal constitutions.[2]

Count IV of the information charged defendant with armed criminal action in commission of the felony of "assault with intent to kill (malice)." Notwithstanding the charge as pleaded in Count IV of the information, the offense of armed criminal action was submitted to the jury via the following verdict directing instruction:

"INSTRUCTION NO. 8

As to Count IV, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about January 24, 1977, in the County of Boone, State of Missouri, the defendant committed the crime of First Degree Murder as charged in Count I, and

Second, that he committed that crime with the use of a dangerous or deadly weapon, namely a pistol,

then you will find the defendant guilty under Count IV of armed criminal action.

"However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, then you must find the defendant not guilty under Count IV of that offense."

In response to Instruction No. 8 the jury returned the following verdict:

"As to Count IV, we, the jury find the defendant James B. Gant guilty of armed criminal action as submitted in Instruction No. 8. [s] William E. Dalton, Foreman."

It is patently obvious that defendant was found guilty of armed criminal action in commission of the homicide (Count I), an offense for which he was not charged, rather than armed criminal action in commission of the assaults (Counts II and III), the offense for which he was charged. It is elementary law that an accused cannot be charged with one offense and convicted of another. *State v. Billingsley*, 465 S.W.2d

569, 570 (Mo.1971). Hence, the trial court was without jurisdiction to impose a sentence for armed criminal action and its judgment was not merely erroneous but absolutely void. *State v. Barnes*, 492 S.W.2d 729, 730 (Mo.1973). This court encounters no qualms in holding that convicting an accused of a crime for which he was not charged represents a classic example of "manifest injustice" or "miscarriage of justice" which falls within the perimeters of "plain error" contemplated by Rule 27.20(c). The judgment of the trial court with respect to Count IV of the information is reversed.

Point (2) relied on by defendant attacks the validity of joining the four felony charges by means of separate counts in one information and subjecting defendant to trial on all four charges at the same time. Defendant posits his attack on two grounds. First, doing so deprived him of a constitutionally fair trial ostensibly in violation of the Sixth and Fourteenth Amendments of the Constitution of the United States. Second, Rule 24.04 promulgated by the Supreme Court authorizing such joinder is substantive rather than procedural in nature and therefore in violation of Art. V, § 5, of the Constitution of Missouri. Defendant, understandably, makes no contention that the multiple offenses charged in the various counts were not based on "two or more acts which . . . [were] part of the same transaction or on two or more acts or transactions which . . . [constituted] parts of a common scheme or plan" as provided in Rule 24.04. No motion for severance was filed by defendant.

Because of the constitutional overtones permeating defendant's second point, the same will be viewed as "plain error" under Rule 27.20(c). *See: State v. Coyne, supra; State v. Donnell, supra;* and *State v. Williams, supra.* The same argument tendered in support of the first prong of defendant's bifurcated attack on joinder of the multiple offenses, deprivation of a fair

---

**2.** See generally *State v. Treadway*, 558 S.W.2d 646 (Mo. banc 1977), *cert. denied* 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978); and *State*

*v. Valentine*, 584 S.W.2d 92, handed down July 17, 1979, by Supreme Court of Missouri, en banc.

trial, was made and rejected in *State v. Baker*, 524 S.W.2d 122, 126 (Mo. banc 1975),[3] and *Baker* is controlling as to this aspect of defendant's second point. The same argument tendered in support of the second prong of defendant's bifurcated attack on joinder of the multiple offenses, that Rule 24.04 authorizing joinder under the facts at hand constituted promulgation of a substantive rather than a procedural rule by the Supreme Court in excess of the authority vested in it by Art. V, § 5, Constitution of Missouri, was made and rejected in *State v. Duren*, 566 S.W.2d 11, 19 (Mo. banc 1977), *rev'd on other grounds* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), and the decision of the Supreme Court of Missouri in *Duren*, to the limited extent noted, is controlling as to this aspect of defendant's second point. Point (2) relied on by defendant affords no relief.

Point (3) relied on by defendant illustrates complete want of any semblance of compliance with the "wherein" and "why" and "citation" requirements of Rule 84.04(d). Paragraphs 5 and 6 of defendant's untimely filed motion for new trial faulted Instruction No. 5, the verdict directing instruction submitting Count I, murder, first degree ("felony" murder). Paragraphs 7 and 8 of defendant's untimely filed motion for new trial are repetitive of grounds otherwise asserted in what this court has denominated points (1) and (5) (which are being separately treated) on appeal. Point (3) is devoid of any citation of authorities and the argument tendered in support thereof, in its entirety, reads as follows: "The trial court erred in failing to sustain the defendant's motion for a new trial for the reason that the defendant did not obtain a fair trial." Point (3) is so glaringly aberrant that it invokes nothing whatsoever for appellate review even under the benevolent auspices of Rule 27.20(c). This court, ex gratia, has looked at Instruction No. 5[4] and finds that it faithfully conformed to MAI–CR 6.19 applicable when this case was

tried and was amply supported by the evidence. Defendant is not entitled to any relief under point (3).

Point (4) relied on by defendant complains that he was improperly convicted on the uncorroborated testimony of Matthews, his accomplice. Defendant has failed to convincingly demonstrate how or why his third point rises to the level of "plain error" within the purview of Rule 27.20(c). This court declines to so treat it. Anticipating a potential fusillade of post-conviction remedies, this court, ex gratia, notes that substantively the testimony of Matthews was sufficient to support defendant's conviction and cannot be said to be "so lacking in probative force as not to amount to substantial evidence." *State v. Harris*, 295 S.W.2d 94, 95 (Mo.1956). *Accord: State v. Summers*, 506 S.W.2d 67, 70–1 (Mo.App. 1974). Moreover, Matthews' testimony was in fact substantially corroborated, directly and circumstantially, by various other witnesses proffered by the state. Once again, even if it had not been, it was sufficient in and of itself to support defendant's conviction of the multiple offense because it was neither self-destructive nor conclusively impeached. *State v. Summers, supra.* Point (4) provides no avenue of relief for defendant.

Point (5) relied on by defendant rests on the premise that he was convicted upon "perjured" testimony given by accomplice Matthews. This is a serious charge which, if true, would trigger review of point (5) as "plain error" under Rule 27.-20(c) because a conviction resting upon perjured testimony would be the antithesis of a conviction evolving from a fair trial. Defendant seeks to convince this court that Matthews' testimony in its entirety was tainted with perjury by reason of the equivocal nature of certain answers given by Matthews on cross-examination with respect to whether his testimony was prompt-

---

3. *See also State v. Duren*, 566 S.W.2d 11, 19 (Mo. banc 1977), *rev'd on other grounds* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

4. Instruction No. 5 was not set forth in full, or otherwise, in the argument portion of defendant's brief as required by Rule 84.04(e).

ed by a light sentence and the proposed dismissal of all remaining charges lodged against him. Defendant ignores the fact that any and all equivocation was removed from this particular vain of Matthews' testimony on redirect examination by the state at which time Matthews unequivocally admitted that the sentence he received for being an "accessory" to armed robbery and the proposed dismissal of the companion charges was and were to be the result of recommendations by the prosecuting attorney if he (Matthews) "told the truth about what happened on the 24th of January . . to the jury and the court." Although such went to the weight and credibility to be given Matthews' testimony by the jury, it cannot be said that it terminally infected all of Matthews' testimony with the taint of perjury. Moreover, to establish error entitling defendant to a new trial on the grounds asserted by him in point (5) it was incumbent upon defendant to show that the alleged perjurious testimony was deliberately falsified, known to be false by the prosecution, and that his conviction was obtained by reason thereof. *State v. Flauaus*, 515 S.W.2d 873, 880 (Mo.App. 1974); and *State v. Nolan*, 499 S.W.2d 240, 250 (Mo.App.1973). Assuming arguendo, that the probity of Matthews' testimony was suspect in some respect, defendant failed to demonstrate any right to relief under the admittedly stringent requirements of *State v. Flauaus, supra,* and *State v. Nolan, supra.* Careful review of the record reveals that in reality defendant's cry of perjury was a figment of his own imagination rather than fact as the jury obviously chose to embrace Matthews' testimony with an aura of credibility rather than an aura of perjury. Defendant is not entitled to any relief under point (5).

■■■■■ Point (6) relied on by defendant charges the trial court with error in having permitted Matthews to testify against defendant while some of the companion charges lodged against Matthews were still pending. No objection was leveled against Matthews' testimony during trial on this ground, and this court is not prepared to say that defendant's belated objection on

appeal to Matthews' testimony is entitled to review as "plain error" under Rule 27.20(c). Even if this court indulged review of point (6) on appeal by warping Rule 27.20(c) it would avail defendant nothing. Matthews was not jointly charged or named as a co-defendant in the multiple count information upon which defendant went to trial, but was separately informed against. Perforce, the rule ostensibly relied upon by defendant that one co-defendant is incompetent to testify against the other is inapplicable. *State v. Haynes,* 510 S.W.2d 423, 424–25 (Mo.1974); *State v. McCarty,* 460 S.W.2d 630, 637 (Mo.1970); and *State v. Nickens,* 581 S.W.2d 99, 101–02 (Mo.App. 1979). Point (6) relied on by defendant affords no relief.

■■■■■ Point (7) relied on by defendant faults his in-court identification by James Edward Norman on the ground that it resulted from an unduly suggestive pre-trial identification lineup. Defendant made no pre-trial motion to suppress Norman's identification testimony, nor was any objection made to Norman's identification of defendant during the trial. Review of this point as "plain error" under Rule 27.20(c) requires not only a finding that it was error to have admitted Norman's in-court identification of defendant but that the error was of such pervasive magnitude that "manifest injustice" or a "miscarriage of justice" has resulted therefrom. *State v. Carpenter,* 436 S.W.2d 748 (Mo.1969); and *State v. Garrett,* 518 S.W.2d 97, 99 (Mo.App.1974). The absence of a pre-trial motion to suppress, conjoined, necessarily, with lack of an evidentiary hearing probing all salient facts appertaining to the pre-trial identification lineup, leaves nothing but some fragmented facts drawn out by defense counsel on cross-examination of James Edward Norman to evaluate the claim of an impermissibly suggestive lineup. This portion of the record has been carefully reviewed and at best it merely disclosed some disparity in height among five black males who composed the lineup, some being the approximate height of defendant and some being slightly taller. Such skeletal evidence is far

too nebulous to seriously suggest, much less compel the conclusion that the pre-trial identification lineup "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification". *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). Going a step further, and assuming arguendo that the pre-trial identification lineup was suggestively tainted, Norman's in-court identification was supported by a wealth of evidence showing a solid independent basis for its reliability and consequent admission. Norman responded to a knock on the door when defendant and Matthews initially arrived at the apartment and admitted them. He was in close proximity to the defendant in the apartment, particularly in the bedroom, for a substantial period of time during which he engaged in a face-to-face confrontation with defendant. Additionally, pictures of certain items of clothing belonging to defendant were introduced and admitted as exhibits during the trial and identified by Norman as having been worn by defendant while he was at the apartment committing the offenses. Norman's in-court identification of defendant was positive and unequivocal. It is no longer open to argument in Missouri that the presence of a reliable independent factual basis for an in-court identification purges it of any unconstitutional taint that might otherwise be claimed to have attached by reason of a suggestive pre-trial identification procedure. *State v. Carey*, 486 S.W.2d 443, 446 (Mo.1972); *State v. Ramsey*, 477 S.W.2d 88, 90 (Mo.1972); *State v. Walters*, 457 S.W.2d 817, 822–23 (Mo.1970); *State v. Csolak*, 571 S.W.2d 118, 123 (Mo.App.1978); *State v. Davis*, 529 S.W.2d 10, 19 (Mo.App. 1975); and *State v. Ealey*, 515 S.W.2d 778, 780 (Mo.App.1974). As aptly stated in *Manson v. Braithwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), "reliability is the linchpin in determining the admissibility of identification testimony . .". In the context of the totality of all the circumstances surrounding the admission of

Norman's positive in-court identification of defendant, no error is perceived, much less error of a nature bespeaking of "manifest injustice" or a "miscarriage of justice" within the purview of Rule 27.20(c). Tangentially, even if the reliability of Norman's in-court identification of defendant be deemed suspect (which it is not), it is difficult to see how its admission could have resulted in "manifest injustice" or a "miscarriage of justice" when considered in light of Matthews' (the accused) testimony as to defendant's active, overt perpetration of the crimes and a vast array of other evidence associating defendant therewith. In the argument portion of one of his briefs, defendant casually makes a broad swipe at Norman's in-court identification of him on the ground that he did not have the benefit of counsel present at the complained of pre-trial identification lineup.[5] Suffice it to say, the record is silent as to when the pre-trial identification lineup occurred, i. e. whether before or after charges were brought against defendant, and is likewise silent as to whether defendant did or did not in fact have the benefit of counsel present when the pre-trial identification lineup occurred. No error associated with point (7) is found.

Point (8) relied on by defendant rests upon an attack on the racial composition of the jury via the claim that defendant was deprived of effective assistance of counsel at the trial level because of counsel's failure to object to the absence of any "black people" on the petit jury which tried and convicted defendant. Defendant, in asking this court to review point (8) as "plain error" under Rule 27.20(c), does so in the face of a totally blank record as to the racial composition of the petit jury which tried him as well as to the jury panel from which it was drawn. Although defendant has baldly asserted that there were no "black people" on the petit jury which tried and convicted him, nothing exists in the

---

5. See generally *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Morris v. State*, 532 S.W.2d 455, 457–58 (Mo.

banc 1976); and *State v. Perkins*, 559 S.W.2d 52, 54 (Mo.App.1977).

record to support it. It is axiomatic that bald assertions such as that made by defendant, which are not reflected by, contained in, or made a part of the officially approved transcript, present nothing for appellate review. *State v. Burrington*, 371 S.W.2d 319, 320–21 (Mo.1963). The rationale behind such a rule is obvious. Issues tendered on the basis of assertions unsupported by the record swim, at best, in the murky waters of speculation, conjecture and surmise and, perforce, lack a reliable basis upon which to render a judicial determination. An effort to seek review of such an issue as "plain error" under Rule 27.20(c) is no panacea for curing it of its basic infirmity. For obvious reasons stated, this court necessarily declines to review point (8) relied on by defendant as "plain error".

The ninth (9th) and final point relied on by defendant questions the sufficiency of the evidence to sustain his conviction as to any one of the four charges. Having previously concluded that defendant's conviction under Count IV of the information must be reversed, only his conviction under Counts I, II and III of the information remain within the ambit of point (9). The presumption of innocence clothing every accused and the inexorable command of proof of guilt beyond a reasonable doubt make the sufficiency of the evidence the quintessence of a valid conviction. As a corollary, common sense dictates that if the evidence is insufficient to sustain a conviction both "manifest injustice" and a "miscarriage of justice" follow as surely as night follows day. Understandably, the courts of this state unhesitatingly review charges of insufficiency of the evidence as "plain error" under Rule 27.20(c). *State v. Dupree*, 477 S.W.2d 129 (Mo.1972); and *State v. Goodwin*, 352 S.W.2d 614, 619 (Mo. banc 1962), *cert. denied* 371 U.S. 915, 83 S.Ct. 262, 9 L.Ed.2d 174 (1962). In determining the sufficiency of the evidence to support the remaining three convictions, the facts in evidence and all favorable inferences to be drawn therefrom must be considered in the light most favorable to the state and all evidence and inferences to the contrary must be disregarded. *State v.*

*Franco*, 544 S.W.2d 533, 534 (Mo. banc 1977), *cert. denied* 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977); *State v. Chase*, 444 S.W.2d 398, 401 (Mo. banc 1969); and *State v. McGlathery*, 412 S.W.2d 445, 447 (Mo.1967). When this legal template is superimposed upon the facts previously iterated at length in this opinion, any question as to the sufficiency of the evidence to sustain defendant's conviction for murder, first degree ("felony" murder), assault with the intent to kill victim Spry with malice aforethought, and assault with intent to kill victim Norman with malice aforethought is quickly resolved against defendant. As evidenced by MAI–CR 6.19, the elements of murder first degree ("felony" murder), in the context of this case, are that defendant caused the death of Breanda Marie Hendren by shooting her and that he did so to prevent detection after robbing James Edward Norman. The evidence presented by the state overwhelmingly proved each and every requisite element of murder, first degree ("felony" murder). The elements of assault with intent to kill with malice aforethought, in the context of this case, as delineated by Section 559.180, RSMo1969, the sustaining statute upon which Counts II and III rested, are that defendant "on purpose and of malice aforethought [did] shoot [Kathy Spry and James Edward Norman] . . . with a deadly weapon . . . with intent to kill . . . [them] . .". There was no want of substantial evidence to prove all elements of all the assault charges to the utter satisfaction of the jury beyond a reasonable doubt. The evidence amassed by the state against defendant during the trial was overwhelming and by no stretch of the imagination can it be said to have been insufficient to support his conviction for murder, first degree ("felony" murder) and the double assaults with intent to kill with malice aforethought.

One is hard put to leave this case without the poignant observation that violence and tragedy far too frequently associated with the illicit traffic in drugs stalked the facts throughout and left their indelible imprint upon the record.

The judgment of the trial court is reversed as to Count IV (armed criminal action) and affirmed as to Counts I (murder, first degree), II (assault with intent to kill with malice aforethought), and III (assault with intent to kill with malice aforethought).

All concur.