**STATE of Missouri, Respondent,**

v.

**Carl HUNT, Appellant.**

**No. 54126.**

Supreme Court of Missouri, Division No. 1.

May 11, 1970.

Motion for Rehearing or to Transfer to Court En Banc Denied June 8, 1970.

556

John C. Danforth, Atty. Gen., Peter H. Ruger, Asst. Atty. Gen., Jefferson City, for respondent.

Daniel P. Reardon, Jr., St. Louis, for appellant.

WELBORN, Commissioner.

Appeal from 10-year sentence imposed by court under Second Offender Act after jury found Carl Hunt guilty of receiving stolen property of a value of over $50.00. § 560.270, RSMo 1959, V.A.M.S.

The property involved, consisting of mechanics' tools and socket wrenches, was taken from Murray Motors at 4870 Natu-

ral Bridge Road in St. Louis on the evening of September 6, 1967. On September 21, 1967, St. Louis police officers, acting under a federal narcotic "want" order arrested George Michael Hoffman. Interrogation of Hoffman by police revealed that he had knowledge of the Murray Motors theft. On September 22, 1967, Hoffman was taken by police officers to the circuit attorney's office and an application for a search warrant was prepared.

The application for the warrant was made by Sergeant Lloyd Altemus of the police department. His application recited that, "upon information and belief," certain described items stolen from Murray Motors were in a building located at 2420 Hadley Street in St. Louis. The application recited that the basis of the affiant's information and belief was two attached affidavits of witnesses. The two attached affidavits were made by Frank Gollhofer and George Michael Hoffman. Gollhofer was manager of Murray Motors and his affidavit described the property stolen from Murray. Hoffman's affidavit stated:

"Comes now George Michael Hoffman, and states that on September 6, 1967, I saw one James Reynolds, alias Frankie Lyman, who I have known for 12 or 15 years. I saw him about 9:00 or 10:00 A.M. on that morning and he said he had some pieces he wanted to sell and he had just left Joe's, a fence, and that Joe would not give him a decent price for these pieces. He asked me if I knew where he could get rid of them and I told him yes, and we then went to a building located at 2420 Hadley Street, known as C & H Auto Parts, run by a Carl Hunt, and we both carried into that building two small tool boxes red in color, one battery charger, an empty tool chest, a comptometer machine, and various loose hand tools, including one Impact wrench, and various Snap-On tools, which included wrenches and sockets, and also some screwdrivers. We carried the battery charger and two tool boxes into the body shop part of the building, with an entrance on North Market, and we carried the other tools and the comptometer machine into the motor shop part of the building, which has its entrance on Hadley Street.

"A week or so later I was riding in an automobile with James Reynolds and we passed the Murray Motor Company at 4870 Natural Bridge, and James Reynolds told me he had gotten all the above described property from that company. He referred to Murray Motors and said that he had 'beat' them, which is an expression that means that he stole them. * * * * *"

The affidavits and the application were sworn to before Judge Waldo Mayfield of the St. Louis Circuit Court. The named affiants appeared before Judge Mayfield on the afternoon of September 22, 1967, and, upon consideration of the application and the supporting affidavits, Judge Mayfield ordered a search warrant for premises at 2420 Hadley Street to be issued. The warrant was executed by police officers in a three-hour search, beginning around 3:00 P.M., September 22. The articles upon which the charge was based were discovered in the premises covered by the warrant. The premises were occupied by C & H Motors. Appellant Carl Hunt, the owner of C & H Motors, was on the premises when the warrant was served. When some items of the Murray theft were found, Hunt was placed under arrest. He was subsequently indicted for the offense for which he was convicted.

On this appeal the issues relate to the validity of the search warrant and its execution. Appellant's first contention is that there was an "absolute absence" of probable cause to authorize the issuance of the search warrant.

Criminal Rule 33.01(a), V.A.M.R., authorizes the issuance of a search warrant for the recovery of stolen personal property.

"The Rule contains two situations in which a search warrant shall issue. The first situation exists upon the filing of a complaint for search warrant which is ver-

ified by oath or affirmation of the complainant and which states facts positively and not upon information or belief. The second situation exists when the complaint is supported by written affidavits stating evidential facts from which the judge determines probable cause. In the first situation, the verified statement of positive facts empowers the court to issue the search warrant; in the second, the court determines probable cause for issuance of the warrant from the facts contained in the complaint and from the affidavits or other evidence submitted to support the complaint. * * *" State v. Taylor, Mo.Sup., 391 S.W.2d 929, 932.

State v. Taylor involved a search warrant issued on an application verified by affidavit which stated positively that certain stolen property was held at a specified location. Here the application was verified on information and belief, but was supported by affidavits, stating evidential facts. Gollhofer's affidavit established the fact that the property had been stolen. Hoffman's affidavit supplied the fact of the disposition of the stolen property. The Gollhofer and Hoffman affidavits supplied an adequate basis for the judge who issued the search warrant to determine the existence of probable cause for his exercise of such power.

The fact that the affidavits in this case expressed the requisite evidential basis for a finding of probable cause distinguishes this case from the cases of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 723, and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. In those cases affidavits for search warrants, found insufficient, showed that they were based upon information received from unidentified informers. The problem in those cases was the extent to which the magistrate might rely upon such information in determining the existence of probable cause. That question is not presented in a case such as this where the application displays an evidential basis for a finding of probable cause. The affidavits permitted the circuit judge to "judge for himself the persuasiveness of the facts relied on * * * to show probable cause." Giordenello v. United States, 357 U.S. 480, 486, 78 S.Ct. 1245, 2 L.Ed.2d 1503. See Aguilar v. Texas, 378 U.S. at 112–114, 84 S.Ct. 1509. The affidavits afforded a substantial basis for the circuit judge to conclude that the stolen property was located at 2420 Hadley Street.

■ Appellant's attack here is premised, to a considerable degree, on the lack of credibility which he accords Hoffman. He suggests that the police should have shown that Hoffman was a "reliable" informer. Again, when the reliance is upon an unidentified informer, some such corroboration is insisted upon. However, Hoffman's identity was revealed. Although Hoffman testified at the trial that he was addicted to narcotics and was suffering from withdrawal symptoms when he executed the affidavit, his personal appearance before the issuing judge gave that judge an opportunity to observe the affiant. The judge's acceptance of the affidavit refutes the contention that Hoffman was suffering from withdrawal symptoms to the extent that he was not a reliable affiant. Furthermore, his knowledge of the theft from Murray and of the articles involved afforded a measure of corroboration.

■ Nor is the validity of the warrant affected by Hoffman's testimony to a somewhat different version of the Murray theft at appellant's trial. At the trial, Hoffman testified that he was an actual participant in the taking of the tools and equipment from Murray Motors. Probable cause for the issuance of a search warrant must be judged on the basis of what was before the issuing judge. McCreary v. Sigler, 406 F.2d 1264, 1268(11), (8th Cir.); Aguilar v. Texas, 378 U.S. at p. 109, n. 1, 84 S.Ct. 1509. Hoffman's testimony at the trial was not so entirely inconsistent with his affidavit in support of the search warrant as to destroy its validity.

■ Appellant also refers to a statement of the issuing judge on the hearing to quash, in which the judge stated:

"[T]hese men who have testified here are police officers, they are men sworn to uphold the law, and they are not totally inexperienced. You men are not rookies, you are not beginners, and I'm not going to set myself up as a little god in street clothes, that I know more than they do about how to enforce and practice our criminal laws. I rely upon, a whole lot upon the reliability of these officers, and their good judgment."

This statement must be considered in the context in which it was made. In making the statement, the court was considering the charge that the warrant was not based upon information from a reliable source. The only witnesses on the motion to quash were police officers. The judge's expression of confidence in them cannot be taken as an admission that judicial discretion was not employed in determining the existence of probable cause for the issuance of the warrant.

We find the search warrant was valid.

■ Appellant contends that his motion to quash should have been sustained because the officers who executed the warrant failed to file an inventory of the property seized and a return following the search, as required by Criminal Rule 33.02, V.A.M.R. The rule does require the officer serving a search warrant to make a return, accompanied by a written inventory of any property taken. The court file on the search warrant bore a notation, dated September 22, 1967, "Return and inventory filed." However, neither the return nor the inventory appeared in the file. At a hearing before Judge Buder, on February 21, 1968, on defendant's motion to quash the search warrant and suppress the evidence obtained through its use, defendant's attorney became aware of the absence of the return and inventory. Judge Buder did not rule on the defendant's motion, but transferred the matter to Judge Mayfield, who heard the motion and overruled it on April 5, 1968. Defendant did not amend his motion to seek relief on the grounds of the absence of the return and inventory. Nor does the record show any request, as authorized by Rule 33.02, supra, by the defendant to the judge for a copy of the inventory.

After the trial had begun, the trial court again took up the motion to suppress. Defendant at that time raised, for the first time, the question of lack of the return and inventory. The court denied the motion, concluding that "the return is a ministerial act and would not invalidate the search warrant and the seizure thereunder." This conclusion of the trial court was probably based on the case of State v. Struce, Mo. Sup., 1 S.W.2d 841, 843–844[9], which the circuit attorney cited to the trial court in defense against defendant's motion.

On this appeal, appellant offers no authority in support of his contention that the trial court's ruling on this question was erroneous. The trial court's ruling is, in fact, supported by the decision of this court in the Struce case. In response to the objection that a search warrant was invalid for failure of the sheriff to make a return to the justice and to attach to the return an inventory of the articles seized (Laws of Mo., 1923, p. 244, § 25; § 4511, RSMo 1929), the court stated (1 S.W.2d 844):

"* * * The questions here raised involve the neglect of ministerial duties on the part of officers, and we have held that the failure * * * to perform such duties did not render the search warrant invalid."

Similar conclusions have been reached in other jurisdictions under statutory requirements for a return and inventory. Such was the conclusion in United States v. Callahan, D.C., M.D., Pa., 17 F.2d 937, 941–942[5], in which the court collects several other federal decisions to the same effect. Subsequent federal decisions reach the

same conclusion. Evans v. United States, 6th Cir., 242 F.2d 534, 536[4, 5], cert. den., 353 U.S. 976, 77 S.Ct. 1059, 1 L.Ed.2d 1137; United States v. Haskins, 6th Cir., 345 F.2d 111, 117[12]; United States v. Averell, D.C., E.D., N.Y., 296 F.Supp. 1004, 1014[15, 16]; United States v. Birrell, D.C., S.C., N.Y., 269 F.Supp. 716, 720; United States v. Gross, D.C., S.D., N.Y., 137 F.Supp. 244, 248[9, 10].

Earlier federal cases tending to support the position of appellant here, such as Giles v. United States, 1st Cir., 284 F. 208, 215[3, 4], and Murby v. United States, 1st Cir., 293 F. 849, 852–853[4, 5], do not appear to have been followed. See United States v. Greene, D.C., D.C., 141 F.Supp. 856, 858[1, 2]; United States v. Clark, D. C., S.D., Ala., 298 F. 533, 534[1]; Giacolone v. United States, 9th Cir., 13 F.2d 108, 109[3].

Cases in other state appellate courts hold that failure to comply with statutory requirements for a return or inventory does not invalidate the search and the evidence seized. People v. Phillips, 163 Cal.App.2d 541, 329 P.2d 621, 625[8]; State v. Brochu, Maine, 237 A.2d 418, 424[13]; State v. Sherrick, 98 Ariz. 46, 402 P.2d 1, 8[13], cert. den., 384 U.S. 1022, 86 S.Ct. 1938, 16 L.Ed.2d 1024; Garcia v. Texas, 164 Tex. Cr.App. 273, 298 S.W.2d 831, 832[2]; Daltwas v. Texas, Tex.Cr.App., 375 S.W.2d 732, 734[2].

The theory of such cases is that the procedural requirements in connection with search warrants are designed to safeguard the constitutional protection against unreasonable searches and seizures. Once the magistrate had determined that probable cause for issuance of the warrant exists and the warrant is properly executed, the failure of the officer to perform some subsequent duty does not nullify his prior valid and legal acts. See United States v. Clark, supra.

United States v. Gross, supra, demonstrates that requirements for a return and inventory, such as prescribed by Supreme Court Rule 33.02, V.A.M.R., are not to be ignored. The court there, in speaking of Rule 41(d) of the Federal Rules of Criminal Procedure, which is practically identical with Supreme Court Rule 33.02 in requiring a return and inventory stated (137 F.Supp. 248):

" * * * Nevertheless the failure to comply with the requirements of Rule 41(d) cannot be disregarded. To sanction non-compliance with the statute [sic] would result in nullifying its purpose."

The court ordered that a return and inventory be filed within ten days. Such a remedy would have been available to appellant had he seen fit to question the validity of the search and seizure on such grounds when the absence of a return and inventory first came to his attention. He did not raise the question until after the trial had begun, the jury sworn and some witnesses had been heard.

Appellant, furthermore, has not demonstrated that he was prejudiced by the absence of the return and inventory. He does not question that the items upon which his conviction was based were in fact found at his place of business. He merely questions how they got there. Defendant's witnesses testified that the tool boxes introduced in evidence "look like" those seized by the officers in their search.

Under all of the circumstances, we find no error in the ruling of the trial court.

Judgment affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

SEILER, P. J., HOLMAN, J., and RIEDERER, Special Judge, concur.

BARDGETT, J., not participating because not a member of the Court when case was submitted.