STATE of Missouri, Respondent,

v.

Ernest MACKE, Appellant.

No. 40311.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 8, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 15, 1980.

Application to Transfer Denied
March 11, 1980.

Gary L. Robbins, Public Defender, Jackson, for appellant.

John Ashcroft, Atty. Gen., Steven D. Steinhilber, Asst. Atty. Gen., Jefferson City, for respondent.

SATZ, Judge.

In the early morning of May 30, 1977, a burglary occurred at Urhahn's Service Station in Cape Girardeau, and during the course of the burglary, a cash register and its contents were stolen. Defendant was charged with the burglary and stealing, tried by the trial court without a jury, found guilty of each charge and sentenced to concurrent 3 year sentences. We affirm.

As grounds for his appeal, defendant contends that: (1) a pretrial hearing on his motion to suppress evidence was improperly conducted and (2) a photograph of a rent receipt for the service station was improperly admitted into evidence because (a) the rent receipt was seized from defendant's apartment by means of an invalid search warrant, (b) the rent receipt was not listed in the original return to the search warrant and the court improperly permitted the state to amend the return to include the receipt and (c) admitting the photograph of the receipt into evidence violated the best evidence rule.

The basis of defendant's first contention is § 542.296(6) RSMo 1978 which provides that in a hearing on a motion to suppress evidence:

"The burden of going forward with the evidence and the risk of nonpersuasion shall be upon the state to show by a preponderance of the evidence that the motion to suppress should be overruled."

Defendant contends this section of the statute was violated because, at the hearing on his pre-trial motion to suppress evidence, the burden of going forward with the evidence and the risk of nonpersuasion was improperly placed upon him rather than the state. Defendant's argument in support of this contention is neither clear nor explicit. His complaint may be against the particular method by which the trial court permitted the state to adduce evidence and, thus, may be a complaint that he was not afforded the procedural process required by the statute; or his complaint may be that, regardless of the procedure followed, the state's evidence failed to overcome the statutory risk of nonpersuasion. On the present record, defendant cannot prevail on either ground.

Defendant's motion to suppress evidence was based upon an allegation that the evidence in question was seized under an improperly issued search warrant. At the

pre-trial hearing on defendant's motion, his counsel stated, in effect, that § 542.296(6) RSMo 1978 means exactly what it says and, thus, the state had the burden of going forward with the evidence and, also, carried the risk of nonpersuasion. The state did not argue against this position and proceeded to go forward with the evidence by asking the court to take judicial notice of the application and affidavits in support of the search warrant in question as well as the search warrant itself. Defendant's counsel specifically stated he had no objection to the court taking judicial notice of these documents. The state rested. Defendant did not adduce any evidence. The court then made findings based upon the judicially noticed documents and overruled defendant's motion to suppress.

■ Obviously, from the procedure described, the state did assume the "burden of going forward with the evidence", and, if there would be any merit to a complaint against the state adducing evidence through the process of judicial notice, defendant specifically waived that complaint. Thus, defendant cannot sensibly complain about the trial court's procedure.

■ However, the real thrust of defendant's argument may be that, regardless of the method chosen to adduce evidence, the state still failed to overcome its statutory risk of nonpersuasion. If this is defendant's contention, he has failed to specifically point out and inform this court where the trial court erred. Rule 84.04(d) requires a defendant to specifically point out and explicitly state why he believes the decision complained of is erroneous. This rule applies to criminal cases. Rule 28.18. *See, e. g., State v. McClain,* 541 S.W.2d 351, 354 (Mo.App.1976); *State v. Brown,* 535 S.W.2d 606 (Mo.App.1976). Assuming that § 542.-296(6) does require the state to carry the risk of nonpersuasion,[1] we are not obliged

---

1. Our courts have consistently equated the term "risk of nonpersuasion" with "burden of proof", *see, e. g., McCloskey v. Koplar,* 329 Mo. 527, 46 S.W.2d 557, 563 (Mo. banc 1932), and, with equal consistency, have distinguished those terms from the "burden of going forward

with the evidence" by noting, among other things, that "(w)hile the burden of going forward with the evidence may shift during the progress of the case, the burden of proof, absent a statutory provision to the contrary . ., remains with the party having the affirmative

to search the transcript and conjure up the specific grounds which may support defendant's general complaint about the state's alleged failure to overcome that risk. *Thummel v. King,* 570 S.W.2d 679, 685 (Mo. banc 1978); *State v. Hulsey,* 557 S.W.2d 715, 717 (Mo.App.1977).

Defendant next contends that a photograph of a rent receipt for Urhahn's Service Station was improperly admitted into evidence because the receipt was seized from defendant's apartment under an invalid search warrant. More specifically, defendant contends the search warrant was invalid because (1) the affidavits upon which the search warrant was issued contained information supplied by an anonymous female phone caller and her credibility and the reliability of her information were not established in the affidavits; (2) the affidavits contained information acquired by a prior illegal entry into and search of defendant's apartment; and (3) the affidavits failed to show the probable cause necessary to issue a valid search warrant.

▮ Defendant failed to preserve the issue of the informant's credibility and the reliability of her information for review. Arguably, defendant may have particularized this issue in his written pretrial motion to suppress evidence. However, at trial, he did not question the admissibility of the photograph of the rent receipt on this ground but simply objected to its admission into evidence because it was "based on illegal search and seizure and illegal entry". Then, in his motion for a new trial, he merely complained about the admission of the photograph into evidence on the general ground that the photograph was the product of an unlawful search and seizure. Obviously, it was not until this appeal that defendant again raised or even mentioned the issue of the informant's credibility and reliability of her information and, thus, he did not preserve this issue for our review. *E. g., State v. Ealey,* 519 S.W.2d 314, 320 (Mo.App.1975).[2]

Moreover, as the record indicates, it is questionable whether defendant preserved the other two grounds he now maintains invalidated the search warrant. Defendant's objection at trial, even his general reference to an illegal entry, did not necessarily call the trial court's attention to the specific grounds he presently argues on appeal. *State v. Lang,* 515 S.W.2d 507, 511 (Mo.1974). Furthermore, defendant did not set forth these objections in detail and with particularity in his motion for new trial as required by Rule 27.20(a). *State v. Madison,* 537 S.W.2d 563, 565 (Mo.App.1976); *State v. Pride,* 567 S.W.2d 426, 433–434 (Mo.App.1978). Nonetheless, we will address the substance of his argument that the affidavits in support of the search warrant contained information gained by a prior illegal entry and search; and, as will

of the issue . . . until the termination of the case". *Frank v. Wabash Railroad Company,* 295 S.W.2d 16, 22 (Mo.1956).

Although the defendant is the moving party in a motion to suppress evidence and, thus, ordinarily would have the "affirmative of the issue", the literal language of § 542.296(6) RSMo 1978 seemingly places both the burden of going forward with the evidence *and* the risk of nonpersuasion (burden of proof) on the state. However, the state has cited the case *State v. Newhart,* 539 S.W.2d 486, 492 (Mo. App.1976), decided two years after the enactment of this statute, in which our colleagues in the Western District held "the motion [to suppress evidence] does not prove itself and the burden is upon the defendant to establish the grounds asserted for suppression of the evidence". Because defendant's contention here is disposed of on other grounds, we do not interpret the procedural language of § 542.-296(6) nor do we consider the propriety of the related holding in *State v. Newhart, supra.*

**2.** This complaint of defendant's is based upon the standards for determining credibility and reliability as defined in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). If preserved, this complaint still would not have been persuasive. Information in the present affidavits more than adequately meet the standards of *Aguilar* and *Spinelli. E. g., United States v. Harris,* 403 U.S. 573, 578–579, 91 S.Ct. 2075, 2079, 29 L.Ed.2d 723 (1971); *Jones v. United States,* 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960); *Draper v. United States,* 358 U.S. 307, 312–313, 79 S.Ct. 329, 332–333, 3 L.Ed.2d 327 (1959); *State v. Wiley,* 522 S.W.2d 281, 288 (Mo. banc 1975).

develop, consideration of this argument necessitates a consideration of defendant's remaining argument of an insufficient showing of probable cause to issue the search warrant. We first set out the pertinent portions of the affidavits in question.

In one affidavit presented at the pre-trial hearing, Officer Eakins, a desk sergeant of the Cape Girardeau Police Department, swore that he believed the stolen property to be at "the upstairs apartment of a dwelling house and residence of one Ernest Macke and others and commonly known as 807 William Street . . ." because the property "was stolen at approximately 0256 o'clock on May 30, 1977, from Urhahn's Service Station . . . and that a Charles Polen, a University Security Police Officer observed a white male, about 5'11" tall, wearing blue jeans, no shirt, with long brown hair and of slender build, standing at the corner of the said service station at the walkway between the main building and the garage, just prior to the stated time, when he called the Cape Girardeau Police Station". In addition, Officer Eakins swore he received an "anonymous telephone call" from a female caller at "approximately 0430 o'clock" on the same day, and the caller told him she had just "observed two white males enter the upstairs apartment at 807 William Street, one a short man about 5'1" tall and the other man . . . taller with long brown hair, both men were wearing blue jeans and no shirts". The caller also revealed that "one [man] was carrying a light colored bag and the other was carrying a large dark object, which might have been a cash register. The reason she called was because she had seen police cars running around shining their spotlights around the area and she wanted to know if they were looking for some guys." Further, Officer Eakins swore that "Ernest Macke has been identified by Officer Riley as being in said apartment on the morning of May 30, 1977. . . . . Ernest Macke [is] a known burglar and is on probation for Burglary. There have been 3 burglaries within 2 blocks of this apartment within the last 4 weeks. Ernest Macke is the approximate size described by the anonymous caller. At the time [the] officer saw Ernest Macke he was wearing blue jeans with no shirt and no shoes. The cash register taken was a large bulky object which was too heavy to carry for one person [for] a long distance. There were two sets of footprints at the scene and the apartment in question is only a block from the scene of this burglary."

In his affidavit, Officer Riley swore that he had personal knowledge of the items stated in Officer Eakins' affidavit. Further, Riley swore that he "investigated the scene of the burglary and saw items taken in the burglary discarded in a northwesterly direction toward 807 William Street". He also swore that "individuals in 807 William St. gave [him] inconsistent answers to [his] questions and acted suspiciously when [he] told them [he] was investigating a burglary in the area". He noted there were two males in the living room and others in the apartment, whom he could not identify, and he swore they refused to identify themselves.

The information in the affidavits that defendant attacks as being acquired by a prior illegal search is, in his language:

"(1) defendant was identified by Officer Riley as being in the apartment;

(2) at the time Officer Riley saw defendant, he was wearing blue jeans with no shirt and shoes; and

(3) individuals in the apartment gave Officer Riley inconsistent answers and acted suspiciously."

■ Since defendant offered no evidence at the pre-trial hearing on his motion to suppress evidence, he must and does rely in part on testimony adduced at trial to support this attack on the search warrant. Normally, in determining the validity of a search warrant, we, as the reviewing court, may consider only that information which was presented to the court that issued the warrant, e. g., *Giordenello v. United States,* 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); *see also Aguilar v. Texas,* 378 U.S. 108, 109 n. 1, 84 S.Ct. 1509, 1511 n. 1, 12 L.Ed.2d 723 (1964), and whether, in reviewing the legality of an alleged unlawful

search which produced information subsequently utilized to obtain a search warrant, we "[are] required or even authorized to consider testimony on that issue at trial as well as that offered upon the hearing on the motion [to suppress] has not been fully developed in this state". *See State v. Whorthon,* 585 S.W.2d 143, 146 (Mo.App. 1979), and cases cited therein. *See also Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925); *Rouse v. United States,* 123 U.S.App.D.C. 348, 349–350, 359 F.2d 1014, 1015–1016 (D.C. Cir. 1966). However, without deciding the procedural necessity or the propriety of the scope of our present review, we will consider all of the evidence bearing on the issues raised by defendant. *See State v. Hohensee,* 473 S.W.2d 379, 380 (Mo.1971).

In addition to the noted affidavits, testimony at trial shows that Officer Riley and another officer went to defendant's apartment about 3:30 a. m. on the morning of the burglary and theft. At that time, Riley had no search warrant, but he had knowledge of the burglary and theft, he had a physical description and a clothing description of the possible suspect and he had information indicating the apartment as the possible location of the stolen items. When Riley approached defendant's apartment, the apartment door was partially open. Riley knocked on the door and, through the open door, he could see a person in the apartment "fitting the description" previously given by the security officer as the person who was seen standing near the burglarized service station. According to Riley, the person in the apartment was wearing an old shirt,[3] blue jeans and Riley believed he was barefooted. It is not clear whether Riley asked to enter the apartment. However, he did enter, asked the person matching the description to identify himself and that person identified himself as Ernest Macke (the defendant). It appears that Macke then asked Riley to leave, telling Riley he was in the apartment illegally. Nonetheless Riley went throughout the apartment and observed two blue-jean clad males and one female, who remained unidentified at that time. Riley left and that afternoon the search warrant was issued.

 Defendant's complaint against Officer Riley's observation and description of him being included in the affidavits has no merit. Riley's observation of defendant was not a search in the constitutional sense. In *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and its progeny, the Supreme Court extended Fourth Amendment protection against an unlawful search to those areas which a person justifiably expects to be private. Normally, a person has a justified expectation of privacy with respect to the interior of his place of residence and, thus, his "home is accorded the full range of Fourth Amendment protections". *Lewis v. United States,* 385 U.S. 206, 211, 87 S.Ct. 424, 427, 17 L.Ed.2d 312 (1966). However, it does not necessarily follow that a search occurs whenever a police officer observes what occurs within a residence. If a person permits an unobstructed view of the interior of his residence through an open door, he cannot reasonably or justifiably rely on privacy from observation into his residence. Thus, a police officer's observation of the interior of a residence made from a place where he had a right to be does not amount to a search in the constitutional sense. *State v. Gott,* 456 S.W.2d 38, 40 (Mo.1970). *See State v. Collett,* 542 S.W.2d 783, 786 (Mo. banc 1976); *State v. Hicks,* 515 S.W.2d 518, 523 (Mo.1974). As was stated in *Gott, supra* at 40, "the Fourth Amendment does not draw the blinds the occupant could have drawn but did not".

 In the present case, defendant lived in an apartment and, although the record and the briefs fail to describe Officer Riley's approach to defendant's apartment,

---

**3.** Defendant does not complain of the discrepancy between this testimony of Officer Riley at trial and the recitation in Eakins' affidavit that "at the time [Riley] saw Ernest Macke he was wearing blue jeans with no shirt and no shoes". However, this fact is not material to the issues raised.

Riley apparently walked up to defendant's apartment on common ground and, thus, while approaching defendant's apartment, Riley violated no rights of defendant. He was properly at defendant's apartment continuing his investigation.[4] Defendant's door was partially opened and, therefore, defendant could not have reasonably relied on privacy from observation when he could be seen through his opened door. Riley, being at a place where he had a right to be, merely employed his natural sense of sight to observe defendant through the partially opened door. His observation, employing his natural senses, made from a place where he had a right to be, did not amount to a search in the constitutional sense. *State v. Gott, supra. See State v. Collett* and *State v. Hicks, supra.* Thus, contrary to this part of defendant's complaint, the description of defendant (matching the suspected burglar) and his location within the apartment was untainted information and was properly included in the affidavits.

Defendant's complaint about his being identified in the affidavits as Ernest Macke is another matter, for this identification was obtained by Officer Riley after he had entered defendant's apartment, with no showing that defendant had consented to the entry. However, the answer to this complaint is similar to the answer given to defendant's preceding complaint.

■ Admittedly, Officer Riley's right to continue his investigation and to interview defendant would not necessarily include his right to walk into defendant's apartment, uninvited, merely because defendant's door was partially opened, *see United States v. Carriger,* 541 F.2d 545 (6th Cir. 1976), and,

thus, arguably, Riley's crossing the threshold of defendant's apartment was a trespass. However, " '[t]he rationale [of *Katz* ] that reasonable expectations of privacy rather than property rights are the interests protected by the fourth amendment should be allowed its full scope. A technical trespass should not necessarily be deemed a fourth amendment search when no expectations of privacy are disappointed'." *United States v. Jackson,* 585 F.2d 653, 659 (4th Cir. 1978). *See State v. Johnson,* 580 S.W.2d 254, 257 (Mo. banc 1979). Just as the open door precluded defendant from any reasonable or justifiable reliance on privacy from observation, his open door precluded him from any reasonable or justifiable reliance on privacy from a verbal inquiry through the open door. Thus, although Riley's crossing defendant's threshold may have been a possible trespass, his possible trespass, incidental or prior to his asking defendant for identification, did not invade or disappoint any reasonable or justifiable expectation of privacy by defendant against a verbal inquiry and, therefore, Riley's possible trespass did not amount to a search in the constitutional sense. *See State v. Cobb,* 484 S.W.2d 196, 199–200 (Mo. banc 1972).

■ Moreover, even if Riley's intrusion were an "unreasonable search" within the meaning of the Fourth Amendment,[5] the fact that defendant's identification followed this intrusion and, thus, may have been the "result" of an illegal act does not necessarily require it to be excluded from the affidavits as tainted information. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In *Wong*

---

4. Even if we assume that Riley approached defendant's apartment by walking over defendant's property, Riley still had a right to approach defendant's apartment, for, whether or not Riley's information at that time was sufficient to support an arrest or issuance of a search warrant, the information he did have was sufficient for him to continue his investigation. The amount and reliability of information is of greatly reduced importance where, as here, an officer acts upon information not to make an arrest or search, but simply to continue his investigation. *See Adams v. Williams,*

407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). So long as Riley's information was sufficiently plausible to be worthy of looking into, it was a proper basis for Riley to approach defendant's apartment for further investigation. *State v. Gott, supra.*

5. " 'Searches' are not particular methods by which government invades constitutionally protected interests: they are a description of the conclusion that such interests have been invaded." Amsterdam, *Perspectives on the Fourth Amendment,* 58 Minn.L.Rev. 349, 385 (1974).

*Sun,* the Court refused to hold that "all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police". *Id.* at 487–488, 83 S.Ct. at 417. Congruent with this refusal of the Court are the recognized exceptions to the exclusionary rule, one of which permits evidence derived from an illegal act to be used if the causal connection between the illegal act and the challenged evidence is "so attenuated as to dissipate the taint". *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939). There is no mechanical test for determining when there is only an "attenuated connection" between a Fourth Amendment violation and the challenged evidence. However, in comparable fact situations, the factors suggested for determining attenuation and dissipation of taint are (1) the temporal proximity of the act and the challenged evidence (2) the presence of intervening circumstances and (3) "particularly, the purpose and flagrancy of the official misconduct". *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 2259, 60 L.Ed.2d 824, 839 (1979).

 Although it is again not clear from the record, apparently defendant's identification was obtained just after Riley entered defendant's apartment. Thus, apparently, there was temporal proximity between Riley's entry and defendant's identification and, apparently, there were no intervening circumstances between the entry and the identification. However, as noted, prior to Riley even approaching defendant's apartment, he had knowledge of the burglary and theft, he had information indicating defendant's apartment as the possible location of the stolen items, he had a physical and a clothing description of the suspect and, then, just prior to his entry, he learned, from his observation, that the person within the apartment matched the description of the suspect. Under these circumstances, we find Riley's entry into defendant's apartment, through a partially opened door to ask defendant for his name, was a sensible reaction to the information he had obtained and was not so flagrant an intrusion as to warrant exclusion of defendant's identification from the affidavits. We are aware that the exclusionary rule was created to deter improper government action, but it is essential to remember that "[a]s it serves this function, the rule is a needed, but grudgingly taken medicament; no more should be swallowed than is need to combat the disease".[6] If Riley's entry were improper, exclusion of defendant's identification in the present case would not be a sensible cure for the impropriety.

 In contrast to defendant's preceding complaint, there is merit to his complaint against information in the affidavits concerning the other individuals in the apartment. As noted, Officer Riley remained in defendant's apartment after defendant asked him to leave, telling Riley he was in the apartment illegally. Ignoring defendant's request, Riley proceeded to go throughout the remainder of the apartment, an area which defendant justifiably and reasonably could expect to be private, and discovered other individuals, who, according to the affidavits, gave Riley inconsistent answers and acted suspiciously. In light of the entire record, this action of Riley was clearly illegal, the resulting information was incurably tainted and should not have been included in the affidavits.

However, including this tainted information in the affidavits does not necessarily invalidate them, for even though "an affidavit in support of a search warrant contains information which is in part unlawfully obtained, the validity of a warrant and search depends on whether the untainted information, considered by itself, establishes probable cause for the warrant to issue". *James v. United States,* 135 U.S.App.D.C. 314, 315–316, 418 F.2d 1150, 1151–1152 (D.C. Cir. 1969); *United States v. Koonce,* 485 F.2d 374, 379 (8th Cir. 1973); *United States v. Sterling,* 369 F.2d 799, 802 (3d Cir. 1966).

---

6. Amsterdam, *Search, Seizure, and Section 2255: A Comment,* 112 U.Pa.L.Rev. 378, 389 (1964).

Thus, our ultimate inquiry is not whether the affidavits contained allegations based upon illegally obtained evidence but whether, if setting aside all tainted allegations, the independent and lawful information stated in the affidavits suffices to show probable cause.

 Limiting ourselves to the untainted information, we conclude, contrary to defendant's third complaint about the affidavits, that the untainted information contained in the affidavits was sufficient to establish probable cause to justify the issuance of a search warrant. Without again detailing the untainted information, the affidavits show that a security officer at the scene of the burglary gave the affiant police officers a physical description and a clothing description of the suspect. In addition, among other facts, the affidavits reflect the affiant officers had a description of the stolen property, general knowledge of criminal activity in the area, evidence obtained from a personal investigation of the burglary scene itself and reliable information gained from a credible informant, all of which provided a reasonable basis for them to believe that the stolen property may have been at 807 William Street. This information was combined with the identity of defendant, his clothing description and physical description matching that of the possible suspect,[7] and his location at the noted address along with the officers' own knowledge of defendant's background. Common sense dictates a finding of probable cause on these facts. *State v. Bradley*, 485 S.W.2d 408, 411 (Mo.1972); *State v. Wiley*, 522 S.W.2d 281, 287 (Mo. banc 1975).

7. As previously quoted, Officer Eakins stated in his affidavit that "Ernest Macke [is] a known burglar and is on probation for Burglary. . . . Ernest Macke is the approximate size described by the anonymous caller". Thus, the matching of defendant Macke's physical description with that of the possible suspect may have come from the officers' previous contacts with defendant, or, from Officer Riley's observation of defendant on the morning of the crime. In either case, this physical description was properly included in the affidavits.

8. These cases were decided under former Rule 33.02 which was repealed prior to the present

In his next argument against admitting the rent receipt for Urhahn's Service Station into evidence, defendant contends the court erred in permitting the state to amend the original return to the search warrant and include in the amended return this rent receipt which was seized from defendant's apartment. We do not agree.

The original return to the search warrant filed by the state did fail to make any reference to the rent receipt. After the court overruled defendant's pre-trial motion to suppress, the state called the court's attention to the omission of the rent receipt from the return. The state asked permission to amend the return so that it would properly reflect the receipt which, according to the state, was found during the course of the search of defendant's apartment. The state informed the court that, along with the amendment, the police officer who seized the rent receipt would file an affidavit stating that he had seized the rent receipt during the course of the search. Over defendant's objection, the court granted the state leave to file an amended return within ten days and the amended return and affidavit were filed.

 It is well established in this state that the return to a search warrant is a ministerial act and that even the total failure to file a return does not affect the validity of the search warrant itself. *State v. Hunt*, 454 S.W.2d 555, 559 (Mo.1970); *State v. Struce*, 1 S.W.2d 841, 843–844 (Mo. 1927).[8] As stated in *State v. Hunt*, supra at 560, the reason the failure to file a return does not invalidate the search warrant is that:

litigation. However, the provisions of the statutes which now govern the *instant search and seizure* do not change the basic provisions of Rule 33.02. For example, § 542.276.8, provides that: "A search warrant shall be executed as soon as practicable . . . and the return made within ten days after the date of making the application" and § 542.276.10(7) provides that a search warrant shall be deemed invalid "[i]f it was not executed within the time prescribed by subsection 8 of this section". Thus, the statute specifically refers to the execution being made within the time prescribed and does not deal with an amendment to the return.

"the procedural requirements in connection with search warrants are designed to safeguard the constitutional protection against unreasonable searches and seizures. Once the magistrate had determined that probable cause for issuance of the warrant exists and the warrant is properly executed, the failure of the officer to perform some subsequent duty does not nullify his prior valid and legal acts."

Since total failure to file a return does not invalidate a search warrant, then *a fortiori,* an amendment to the return would not invalidate the warrant or render inadmissible the rent receipt which was seized. *E. g., United States v. Moore,* 452 F.2d 569, 573 (6th Cir. 1971), *cert. denied,* 407 U.S. 910, 92 S.Ct. 2435, 32 L.Ed.2d 684 (1972). This is not to say that such an amendment may never be shown to be prejudicial, causing the article seized to be inadmissible. However, defendant, here, has shown no prejudice but merely argues the amendment process itself was error.

Defendant finally contends the trial court violated the best evidence rule by admitting into evidence a photograph of the rent receipt rather than the receipt itself.

Defendant misinterprets and misapplies the best evidence rule. When the terms or contents of a writing are in issue, the best evidence rule does require the production of the original writing itself and the rule does reject other evidence unless and until the failure to produce the original is satisfactorily explained. *McCormick, on Evidence,* Chap. 23, (2d ed. 1972). The obvious purpose of the rule is to prevent fraud and the likelihood of mistake when proving the terms or the contents of the writing. *See e. g., F. C. Preuitt Const. Co., Inc. v. Doty,* 536 S.W.2d 908, 909, 914 (Mo.App.1976). However, when the terms and contents of a writing are not in issue, application of the rule serves no meaningful purpose and, thus, the rule does not apply when a party does not seek to prove the terms or contents of the writing in question. *State v. Curry,* 473 S.W.2d 747, 748 (Mo.1971); *Wilborn v. Williams,* 555 S.W.2d 44, 45–46 (Mo.App.1977).

In the instant case, the photograph of the rent receipt was not offered to prove the terms of the receipt but rather, it was offered to connect the defendant with the charges in issue. The terms of the receipt were not in dispute and, thus, admitting the photograph of the receipt into evidence did not violate the best evidence rule, because the rule did not apply. *State v. Curry, supra. See also State v. Coleman,* 441 S.W.2d 46, 51 (Mo.1969).

The judgment of the trial court is affirmed.

DOWD, P. J., and CRIST, J., concur.