**STATE of Missouri, Respondent,**

v.

**Henry B. JOHNSON, Appellant.**

**No. 46618.**

Missouri Court of Appeals,
Eastern District,
Division Six.

Feb. 28, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 17, 1984.

Application to Transfer Denied
June 19, 1984.

Henry B. Robertson, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

Before REINHARD, P.J., and CLARK and MOORE, Special Judges.

CLARK, Special Judge.

Appellant was jury tried and was convicted of robbery in the second degree and carrying a concealed weapon. On this appeal, he raises points of error concerning evidence asserted to have been procured in violation of appellant's Fourth Amendment rights against search and seizure. He also contends his challenge for cause as to a member of the jury panel was erroneously denied. The evidence points, first considered, necessitate some recapitulation of the facts.

In the early afternoon of July 23, 1981, a United Parcel Service driver was making deliveries in a St. Louis city neighborhood. While in his vehicle, the driver was accosted by two men who appeared to be armed. After threatening the driver, the men pushed him to one side, grabbed six or seven boxes from the truck and ran off down the street. The police were called and a number of officers, some of the uniformed service and others from the de-

tective unit, arrived in the area within a few minutes.

The two detectives who accomplished the arrests received information about the suspects by radio. The reports were updated as more information was acquired. In sum, the detectives were alerted to look for two negro men, one five feet seven or eight with acne, hair braided in corn rolls and wearing a green army jacket. The description of the second man was only that he was taller, five feet ten. When last seen, the men were carrying the boxes and running to the rear of a connected row of apartments in the 2600 block of Dickson.

The detectives arrived at the location for the purpose of apprehending the robbers and there observed appellant emerge from the front door of an apartment at 2620 Dickson. The address was later stated by appellant to be his place of residence. The detectives testified that appellant appeared to match the description of the shorter robber by his race, height, rough complexion and braided hair. They left their car to take him into custody, at which point appellant turned and walked rapidly back to the apartment door at 2620 Dickson. He appeared to be nervous and began shaking and banging on the apartment door. He failed to effect entry and was placed under arrest. In a pat down search, a revolver was found concealed in appellant's trousers.

After being informed of his *"Miranda"* rights, appellant attempted to minimize his involvement in the crime. He stated to one of the detectives that he had not robbed anyone, but had merely carried some of the boxes. He indicated that the man who had actually committed the robbery was in the apartment, apparently cornered there by police surveillance at the front and rear.

The other detective went to the rear of the apartment building and found the back door of apartment 2620 Dickson to be ajar. Through the partial opening, the detective saw cartons, packing materials and Polaroid film packs. He entered the apartment, arrested the second suspect found there and seized the boxes and merchandise later identified as having been taken in the robbery of the UPS truck. Appellant's fingerprints were recovered from several of the Polaroid film packs.

In his first point, appellant contends the trial court erred in not sustaining his motion to suppress evidence of the revolver found on his person at the time of his arrest. He contends the officers did not have probable cause to arrest him without a warrant and thus had no ground to sustain the pat down search which disclosed the revolver. There is no contention made that the officers were not entitled to rely on the information received by radio or that any of the reports came from unreliable sources. Appellant merely contends that the general description of the suspects was insufficient to focus attention on him, but was equally applicable to a large number of young men to be found in the populus neighborhood. He further points out that he was shirtless whereas the description indicated the robber wore a green jacket.

At the heart of the question is the issue of whether the detectives had information sufficient to warrant belief by a man of reasonable caution that appellant had committed the offense under investigation.

The existence of probable cause for an arrest without a warrant depends on the particular circumstances and the particular offense involved, the question being determined by factual and practical consideration of everyday life on which reasonable and prudent men act. Probable cause requires a reasonable ground for belief of guilt. *State v. Cuckovich*, 485 S.W.2d 16, 20 (Mo. banc 1972). As the court observed in *State v. Dodson*, 491 S.W.2d 334, 336 (Mo. banc 1973), the decision as to probable cause for arrest is one of fact to which the often quoted principles apply.

The facts of the present case are similar to those in *State v. Dodson, supra.* There, the broadcast described the suspect as a negro male, about 25 years old, five foot six, weight about 140 wearing a blue or tan striped sweater which could have been a pullover. Dodson was arrested because, in

the view of the officers, Dodson matched the broadcast description. In fact, Dodson was six feet tall, he weighed 170 pounds, was 18 years of age and the button-down sweater he was wearing was grey with orange stripes. The court held the warrantless arrest of Dodson to have been proper, notwithstanding the variances in height, weight and age. Of significance to the decision was the added fact that Dodson was near the site of the crime and was arrested soon after commission of the offense.

■ In the present case, the broadcast description of the shorter robber conformed more closely to appellant's physical character than did the description in *State v. Dodson, supra.* In addition, appellant had the distinguishing features of complexion and hair style and he was found in the vicinity of the building to which the robbers had fled less than ten minutes before. Appellant's conduct in attempting to avoid the officers added weight to the other circumstances suggesting cause for appellant's arrest. While flight alone does not establish probable cause, it can supply the key ingredient justifying the decision by a law enforcement officer to take action. *State v. Trimble,* 654 S.W.2d 245, 258 (Mo. App.1983).

■ The arrest of appellant was upon probable cause which in turn furnished the basis for the pat down search. There was no error in admitting into evidence the revolver which was the product of that search.

Appellant's second point concerns his motion to suppress the UPS packing boxes and contents seized when the officer entered the rear door of the apartment and arrested the second suspect. Appellant contends there were no exigent or exceptional circumstances justifying the warrantless entry and that the state may not rely on the plain view doctrine because the officer had no right to be in the apartment or even in the backyard from which position the stolen merchandise was first visible.

In the first place, we cannot agree that the facts support appellant's assertion that the officer was not lawfully entitled to be in the yard area at the rear of the apartment building. According to the evidence, the apartment in which the stolen goods were observed, 2620 Dickson, was one unit among a row of similar units in a long brick building. The officer proceeded on foot from the front around the building to the rear and ascertained which door gave rear entrance to number 2620 by counting the units from the end. He then approached the doorway where the opening gave a view of the room containing the packing boxes and merchandise. There was no evidence of any fence or other enclosure restricting access by the public to the rear yard.

■ The proponent of a motion to suppress evidence has the burden of establishing that his Fourth Amendment rights were violated by the challenged search or seizure. *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). An area to which the defendant has exhibited no proprietary interest of privacy engenders no reasonable expectation that the intrusion thereon is constitutionally unreasonable and this is true even though entrance is gained by trespass. *State v. Stavricos,* 506 S.W.2d 51, 57 (Mo. App.1974). Where the police in pursuing an investigation approach an apartment by entry upon common ground, they violate no rights of the apartment dweller. *State v. Macke,* 594 S.W.2d 300, 306 (Mo.App.1980).

■ Appellant relies on the doctrine that Fourth Amendment protection of a residence extends to the open areas surrounding it and, citing *Fixel v. Wainwright,* 492 F.2d 480 (5th Cir.1974), he contends that the backyard of an apartment is within constitutional protection because it is unlike common hallways and similar places open to the public. It is unnecessary to disposition of this case that we rule the extent of protection afforded the yards and walkways of apartment premises. Appellant's evidence here presented at the suppression hearing demonstrated no enclo-

sure limiting access to the rear apartment door as was the proof in *Fixel v. Wainwright, supra,* by means of a fenced yard or any other boundary indications. Indeed, the proof here admits of the possibility that the officer may have stepped from a public way to the apartment door. Even were the officer to have crossed private land adjacent to the apartment in reaching the door and so have technically committed a trespass, that alone does not establish a constitutionally protected interest in appellant against intrusion. *State v. Johnson,* 580 S.W.2d 254, 257 (Mo. banc 1979).

Under the facts in this record, there was not a sufficient showing that appellant was entitled to complain of any Fourth Amendment violation as a consequence of the officer's appearance at the apartment door. That being so, the observation of the stolen goods viewed from outside the apartment did not amount to a search in the constitutional sense. *State v. Macke,* 594 S.W.2d 300, 306 (Mo.App.1980). That which is exposed to public view, even in a private dwelling, is not subject to Fourth Amendment protection. *State v. Gott,* 456 S.W.2d 38, 40 (Mo.1970).

Appellant also contends even assuming no unlawful intrusion when the detective viewed the stolen goods through the doorway, that the warrantless entry into the apartment itself and the consequent seizure of the goods were constitutionally offensive. He argues there was no reason why a guard could not have been posted and a warrant procured before entry.

Among the exceptions to the constitutional prohibition against warrantless entry into a dwelling is entry and search by consent. *State v. Epperson,* 571 S.W.2d 260, 263 (Mo. banc 1978), *cert. denied,* 442 U.S. 909, 99 S.Ct. 2820, 61 L.Ed.2d 274 (1979). In this case, appellant was a resident of the apartment entered and it was at appellant's invitation that the officer entered the apartment to seek out the suspect appellant stated was cornered there. Appellant cannot reasonably be heard to complain that the officers acted on his suggestion when appellant knew a second man was being sought and he himself directed the officers to the apartment where the robber could be found.

There was no error in the admission in evidence of the stolen articles, boxes and appellant's fingerprints.

In the final point, appellant contends the trial court erred in refusing appellant's challenge of venireman Udell Harris for cause. Before considering the point on the merits, it is necessary to address the state's argument that the point has not been preserved because appellant presented by transcript only portions of the voir dire examination. As we understand the contention, the state advocates a per se rule that an error in juror qualification may not be considered unless the entire voir dire examination of the jury panel is transcribed and included in the record on appeal.

The state cites no cases holding a record to that extent a prerequisite to appellate review of a juror qualification issue. The cases cited do deny review if the appellant includes none of the voir dire in the record on appeal. In this case, the extracted voir dire of venireman Harris is before us and the state does not specifically point to any omitted portion of the voir dire which is contended to be relevant to the point on appeal. Counsel is under a duty to order only those portions of the transcript necessary to determination of the issues on appeal. *State v. Hamell,* 561 S.W.2d 357, 365 (Mo.App.1977). The state's position here is untenable and the contention is rejected.

Turning to the merits of the point, the capsulized content of venireman Harris' responses to inquiry about inferences of guilt was that he possibly would consider the failure of an accused to testify an indication of guilt, that he was in disagreement with the rule of law that failure of the accused to testify did not constitute evidence against him, but he would follow the law. Harris' attitude and inclination is best illustrated by his response to inquiry about his fairness when he stated: "I could be a fair juror. I may not be the fairest,

but I can be a fair juror." Appellant challenged venireman Harris for cause and the challenge was refused.

It is apparent from several statements by venireman Harris that he recognized a prejudice against a defendant who refused to testify and that he held a personal belief that the rule of law requiring the jury to draw no adverse inference from the failure of a defendant to testify was wrong. Several times he restated the same views and also acknowledged his inability to be a fair juror. Despite the suspect nature of venireman Harris' qualifications as a juror, however, this court is severely limited in the scope of review of a trial court's decision on juror qualification.

 The trial court has very wide discretion in determining the qualifications of prospective jurors. The ruling by the trial court will not be disturbed unless the record shows a clear and manifest abuse of that discretion and a real probability of injury to the complaining party. *State v. Betts,* 646 S.W.2d 94, 98 (Mo. banc 1983). Whatever personal opinions a juror has about the law are immaterial except when they are so unyielding as to preclude a juror from following the court's instructions. *State v. Betts, supra.* All doubt as to the propriety of a ruling with respect to the qualifications of a juror is normally resolved in favor of the trial court. *State v. Ealy,* 624 S.W.2d 490, 493 (Mo.App. 1981).

The present case is much like *State v. Pennington,* 642 S.W.2d 646 (Mo.1982) in which several members of the jury panel expressed doubt as to their ability to be fair if the defendant did not take the stand. The panel members not struck for cause were those who indicated an ability to put aside their feelings and follow the court's instruction. The opinion held it not to be an abuse of discretion for the trial court to refuse the challenge to those panel members who disagreed with the law but were willing to follow the jury instructions.

In the subject case, the rehabilitation of venireman Harris was essentially accomplished by leading questions which, in the main, called for and elicited affirmative responses of "yes" and "right." Nonetheless, Harris stated he was willing to follow the law despite his personal belief and, under the authorities cited above, the statement was a sufficient fact upon which the trial court was entitled to conclude, as it did, that Harris was a qualified juror.

The judgment and sentence are affirmed.

All concur.